630

THE STATE, EX REL. RAMIREZ, APPELLEE, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as State, ex rel. Ramirez, v. Indus. Comm. (1982),
69 Ohio St. 2d 630.]

(No. 81-908—Decided March 9, 1982.)

*Clayman & Jaffy Co., L.P.A., Mr. Stewart R. Jaffy* and *Mr. John F. Livorno,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. Michael J. Hickey* and *Ms. Nancy J. Miller,* for appellants.

CLIFFORD F. BROWN, J.   This case raises the following question. Is temporary total disability as used in R. C. 4123.56 a disability which prevents a worker from returning to his former position of employment? The answer is affirmative, for the following reasons.

The pertinent portions of R. C. 4123.56, temporary disability compensation, provide as follows:

"In the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of his average weekly wage so long as such disability is total, * * * .

"Payments shall continue pending the determination of the matter, however payment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment.

"After two hundred weeks of temporary total disability benefits the claimant shall be scheduled for an examination by the Industrial Commission medical department for an evaluation to determine whether or not the temporary disability has become permanent * * * ."

The Court of Appeals in this case correctly and unanimously determined that, "An employee is entitled to be paid temporary total disability when injured and unable to work until one of the following three things occur: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) the temporary disability has become permanent."

R. C. 4123.56, as excerpted above, specifically refers to the capability of an employee "to return to his former position of employment." "Position" is defined by Webster's Third New International Dictionary as "the group of tasks and responsibilities making up the duties of an employee." The Industrial Commission, in determining whether relator was entitled to temporary total disability, did not consider whether he was capable of returning to his former position of employment as a construction laborer.

The question whether temporary total disability means a disability which prevents a worker from returning to his former position of employment has been decided by this court in *State, ex rel. Consolidation Coal Co.,* v. *Indus. Comm.* (1979), 58 Ohio St. 2d 127, where, in a *per curiam* opinion, at pages 127-129, *inter alia,* quoting pertinent parts of the medical report of claimant Hall's examining physician, we held:

"Claimant * * * applied for * * * benefits claiming total disability due to coal miner's pneumoconiosis. * * * However, the Industrial Commission reversed and found that the claimant had become totally disabled. * * * The Court of Appeals, in

upholding the commission and denying the writ, quoted from the medical report * * * as follows: '* * * V. * * * This patient is totally disabled from engaging in any further coal mine employment.' The Court of Appeals found this report to be sufficient evidence to support the commission's finding. * * * A review of the record reveals that the finding of the commission is supported by evidence of probative value. The judgment of the Court of Appeals is, therefore, affirmed."

The Court of Appeals for Franklin County in the same case, *State, ex rel. Consolidation Coal Co.,* v. *Indus. Comm.* (January 31, 1978), No. 77 AP-579, unreported, stated that the Industrial Commission was correct in finding claimant Hall temporarily totally disabled, in this language:

"In considering temporary total disability we find it is only necessary to consider the job for which the claimant was employed."

In the *Consolidation Coal Co.* case, the Industrial Commission took an opposite posture than in the present *Ramirez* case, and stated correctly in its brief in this court the following proposition of law:

"The Court of Appeals correctly stated and applied a different standard for total disability when a workers' compensation claim involves temporary total disability, rather than a claim for permanent total disability." 1184 Ohio Supreme Court Briefs and Records, 3d Series, Case No. 78-375. That different standard urged by the Commission was the "former position of employment" test.

As reflected in the record and briefs in *Consolidation Coal* and in this case, we are presented with the same legal question in both cases, namely, whether a claimant is temporarily totally disabled when he cannot return to his former position of employment.

Since the *Consolidation Coal* case in 1979, this court has considered only one other case on the question of temporary total disability. In *State, ex rel. Ianiro,* v. *Indus. Comm.* (1979), 60 Ohio St. 2d 152, this court properly affirmed the Court of Appeals for Franklin County's denial of a writ of mandamus to the claimant, who challenged a commission order denying his claim for temporary total disability. In that case, the record

clearly revealed that claimant could return to his former position of employment. *Ianiro, supra,* at page 153.

The holding against claimant in *Ianiro* is consistent both with our decision in favor of claimant in *Consolidation Coal Co.* and our holding in favor of relator in the present *Ramirez* case.

This court has repeatedly stated, as in *State, ex rel. Bunch, v. Indus. Comm.* (1980), 62 Ohio St. 2d 423, at page 427, that the purpose of temporary total disability benefits under R. C. 4123.56 is to compensate for loss of earnings, as contrasted with the purpose of permanent total disability under R. C. 4123.58 to compensate for impairment of earning capacity. Therefore, those cases which involve the question of permanent total disability, e.g., *State, ex rel. Nemeth, v. Indus. Comm.* (1953), 96 Ohio App. 167, 170, are irrelevant.

This court agrees with the Court of Appeals in this case that the Industrial Commission abused its discretion because it did not consider whether relator was able to return to his former position of employment either partially or completely. According to relator's affidavit, he was not able to work in that capacity. However, that issue was not considered either by the examining specialist or by the Industrial Commission.

We affirm the Court of Appeals judgment granting a writ of mandamus and ordering the Industrial Commission to take evidence and to consider whether relator was capable of returning, either partially or completely, to his former position of employment on December 3, 1979. If relator was not able to return to his former position of employment at that time, the Industrial Commission is ordered to pay him temporary total disability compensation from December 3, 1979, until he is no longer eligible for such payment by virtue of the happening of one of the events described in this decision.

*Judgment affirmed.*

W. BROWN, SWEENEY and PATTON, JJ., concur.

CELEBREZZE, C. J., LOCHER and KRUPANSKY, JJ., dissent.

PATTON, J., of the Eighth Appellate District, sitting for HOLMES, J.

LOCHER, J., dissenting.  The majority reaches beyond the plain language of the Revised Code and indulges in judicial legislation. For this reason, I dissent.

Initially, I must set forth the facts of this case which do not appear in the statement of the case. At the time of his injury, appellee was 21 years old and a laborer in the construction industry. He received treatment from Dr. Arnold O. Allenius, D.O. During 1977, 1978 and 1979, Dr. Allenius reported to the bureau that appellee's condition was either permanent partial disability or temporary total disability. Dr. Allenius typically projected the date on which he expected appellee to be able to resume work to be approximately three months after the date of the most recent examination.

Appellee was referred to an orthopedic specialist, Dr. John Q. Brown, M.D., in May of 1979. Dr. Brown examined appellee on June 7, 1979, and concluded that he had approximately 75 percent temporary partial disability.

A district hearing officer of the Industrial Commission ("commission") ruled, on October 26, 1979, that appellee should receive 75 percent temporary partial disability compensation from December 3, 1979, through February 28, 1980. This determination was "[b]ased on medical reports of Drs. Allenius and Brown." Any decision as to compensation after February 28, 1980, was to await the report of a medical specialist. Dr. D. D. Kackley, M.D., who is also an orthopedic specialist, examined appellee on October 3, 1980, and concluded that his condition was *40 percent temporary partial disability.*

## A.

Mandamus is an extraordinary writ. Its use is subject to stringent criteria. See *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42, paragraph one of the syllabus. In workers' compensation cases, a court may issue a writ of mandamus if, based on the evidence, the Industrial Commission has abused its discretion. See, *e.g., State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 167; *State, ex rel. Ianiro,* v. *Indus. Comm.* (1979), 60 Ohio St. 2d 152, 153.

The majority urges that *State, ex rel. Consolidation Coal*

*Co.,* v. *Indus. Comm.* (1979), 58 Ohio St. 2d 127, supports appellee's position. I disagree.

In *Consolidation Coal,* an employer sought a writ of mandamus in the Court of Appeals after the Industrial Commission found that an employee, who had coal miner's pneumoconiosis, was totally disabled. The Court of Appeals for Franklin County upheld the commission's finding and denied the writ. We unanimously affirmed the judgment of the Court of Appeals and noted: " * * * A review of the record reveals that the finding of the commission is supported by evidence of probative value." *Consolidation Coal, supra,* at 129. The doctor's report in that case included: (1) an opinion that the diagnosed condition was related to the patient's employment; (2) the statement that " '[t]his patient should be restricted from any activity that requires effort, due to his history of shortness of breath' "; and (3) the conclusion that the employee was totally disabled. *Id.,* at 128. The record in that case also indicates that the employee was 62 years old and had worked in strip mines for approximately 40 years. 1184 Ohio Supreme Court Briefs and Records, 3rd Series, Case No. 78-375.

In this case, the Court of Appeals issued a writ of mandamus, reasoning that *its* opinion in *State, ex rel. Consolidation Coal Co.,* v. *Indus. Comm.* (January 31, 1978), No. 77AP-579, unreported, controlled. In that opinion, the Court of Appeals stated: " * * * In considering temporary total disability we find it is only necessary to consider the job for which claimant was employed."

Yet, we did not adopt the "former position of employment" standard of the Court of Appeals in our decision in *State, ex rel. Consolidation Coal Co.,* v. *Indus. Comm., supra.*[2]

---

[2] The majority maintains that the commission asserted before this court, in *Consolidation Coal, supra* (58 Ohio St. 2d 127), that its policy and past practice was to use the "former position of employment" standard. We note, however, that any reference to this point in the brief of the commission was merely argumentative and should not determine the outcome of this case. We permit inconsistencies in pleadings. Civ. R. 8(E)(2). I see no reason why a tangential point in a brief before this court should set a party's position in concrete for all time. Rather, the record in that case does not clearly establish any Industrial Commission policy. Accordingly, "due deference to an administrative interpretation" (*Jones Metal Products Co.* v. *Walker* [1972], 29 Ohio St. 2d 173, 181) is not controlling. Furthermore our *per curiam* opinion in *Consolidation*

Rather, we applied the "abuse of discretion" standard discussed above and reviewed the record to determine whether "the finding of the commission * * * [was] supported by evidence of probative value." 58 Ohio St. 2d, at 129.

This court reviews the judgments of the Court of Appeals, not its rationale. See Section 2(B)(2)(d) and (e) of Article IV of the Ohio Constitution. We did not adopt the "former position of employment" standard in our decision in *Consolidation Coal* and should decline to do so now. I would reaffirm the well-settled "abuse of discretion" standard. *Teece,* at 167, and *Ianiro,* at 153, *supra; State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278, 282-283.

At the time of his injury, appellee was 21 years old. His examining physician, Dr. Allenius, periodically reported that appellee incurred permanent partial disability. At other times, Dr. Allenius concluded that appellee's disability was temporary total in nature. In addition, Dr. Brown, an orthopedic specialist, concluded that appellee suffered a 75 percent temporary partial disability. Here, as in *Ianiro, supra,* " * * * we find sufficient factual medical evidence to support the commission's decision." 60 Ohio St. 2d, at 153. Accordingly, we should hold that the record supports the finding of the Industrial Commission that appellee receive 75 percent temporary partial compensation.

## B.

The majority also concludes that R. C. 4123.56 requires that we apply the "former position of employment" standard in this case. I disagree.

Am. Sub. S. B. No. 545 added the following provision to R. C. 4123.56: "In the case of an *employer who has elected to pay compensation direct,* payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer. Payments shall continue pending the determination of the matter, however payment shall not be made for such period when any employee has returned to work

---

*Coal* makes no reference to Industrial Commission practice. This aspect of that case, therefore, was not dispositive.

or when an employee's treating physician has made a written statement that the employee is capable of returning to his *former position of employment."* (Emphasis added.) (136 Ohio Laws 1075, 1159.) On its face, this amendment applies *only* to those situations in which the employer is self-insured.

Furthermore, the Ohio Legislative Service Commission reached the same conclusion. Under the heading of "Self-Insuring Employers," the Legislative Service Commission observed: "The act requires that in the case of a temporary disability award against *a self-insuring employer,* payments must be made for a duration based upon the reports of the attending physician. If the employer disputes the reports, payments may be terminated only upon application to and hearing by a district hearing officer, but payments will continue pending the termination of the matter. The act does not require payments to be made where the employee has returned to work or when his physician treating him makes a written statement that he can return to his *former position."* (Emphasis added.) Summary of 1976 Enactments, August-November, 111th General Assembly, at page 32. This commentary strengthens our conclusion that the General Assembly intended that one's ability to return to his or her former position of employment should be a concern only if the employer is self-insured.

This distinction between self-insured employers and those who participate in the state fund appeals to common sense as well. Self-insured employers are in a position to take serious advantage of their employees. By amending R. C. 4123.56, the General Assembly obviously decided to build in protection for employees of self-insured employers by adding the "former position of employment" standard. The commission, however, provides this protection for employees of firms participating in the state fund. Therefore, the General Assembly deemed the "former position of employment" standard to be unnecessary in cases before the commission.

I see no reason why a 21-year-old man should not be expected to take some initiative toward his own rehabilitation when, in light of the evidence, the commission had a reasonable basis on which to find that he is less than totally disabled. The reason that the disability, and therefore the compensa-

tion, is *temporary* is so that those who can work will get back to work. In this case, appellee did not so much as respond to the appointment letters which the Bureau of Vocational Rehabilitation sent to him.

The majority diverges from the issues pertinent to this case, however, to discuss the difference in the goals of temporary as opposed to permanent total disability. Instead, we should limit our inquiry to the issue of whether, based on the record, the commission abused its discretion. The majority opinion sidesteps this analysis, ignores the clear intent of the General Assembly, creates new law and establishes a criterion which discourages industry on.the part of those who are injured. Furthermore, a mere self-serving affidavit can spark a new and potentially expensive and time-consuming factual inquiry by the commission regarding the state of the job market for a particular position. I refuse to counsel this approach when, as here, it has no basis in the Revised Code and the commission has made a creditable conclusion based on the record.

Accordingly, I would hold that the Industrial Commission did not abuse its discretion, reverse the decision of the Court of Appeals and deny appellee's request for a writ of mandamus.

CELEBREZZE, C. J., and KRUPANSKY, J., concur in the foregoing dissenting opinion.