Irvin J. Stiffler, Petitioner *v.* Workmen's Compensation Appeal Board (Great A & P Tea Co.), Respondents.

Submitted on briefs March 2, 1983, to Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*S. R. DiFrancesco, Sr.*, for petitioner.

*David P. Andrews, Patterson, Evey, Routch, Black, Dorezas & Magee*, for respondent, Great A & P Tea Co.

OPINION BY JUDGE CRAIG, April 7, 1983:

Irvin J. Stiffler appeals from a Workmen's Compensation Appeal Board order which suspended his benefits, modifying a referee's order which had granted the Great A & P Tea Company its termination petition.

Mr. Stiffler has been a regular part-time employee with A & P since December of 1972, primarily responsible for stocking shelves with merchandise weighing 40 to 50 pounds. On May 3, 1977, Mr. Stiffler suffered a work-related injury described as "severe lumbosacral sprain" and received compensation under a Notice of Compensation Payable by his self-insured employer.

In support of its termination petition, A & P offered the deposition of Dr. William R. Davison, a board-certified orthopedic surgeon, who testified that, in his two examinations of the claimant, he could find neither orthopedic abnormalities nor clinical or physical evidence of any neurological deficit. Accordingly, Dr. Davison recommended that Mr. Stiffler return to his employment with a restriction against lifting weights over 50 pounds on a repetitive basis.

A & P also offered the deposition of Dr. Howard B. Finkelhor, a board-certified neurologist and psychiatrist who, after taking a history of the claimant's injury and seeing him on five separate occasions in 1980, testified that Mr. Stiffler did not exhibit any neurological abnormalities[1] and that he should return to work.[2]

Dr. Finkelhor also testified that, although Mr. Stiffler complained of back pains, the prolongation of

---

[1] Dr. Finkelhor testified as follows:

Q. Did you find any neurological abnormalities in any of your examinations?

A. No, I did not.

[2] On cross-examination, Dr. Finkelhor testified:

Q. Didn't you agree with me that back on May 15, 1980, this man had psychosomatic problems from this accident?

A. All right. I agreed, and I put it in terms of the fact that I observed that his morale was down. He just felt he couldn't perform. *Now, I am saying he can perform and it is in his own best interests to perform.* . . . (Emphasis added.)

his symptoms was psychosomatic in origin[3] and unrelated to his injury.[4]

Mr. Stiffler did not offer any medical testimony to support the position that his disability remained.

Apparently relying upon the testimony of Drs. Davison and Finkelhor, the referee made the following pertinent findings of fact:

15. The claimant was orthopedically and neurologically sound, without any abnormalities or deficits.

16. The claimant suffered from psychological and emotional problems that were not related to his injury, but related to the long period that he had not worked and his eroded confidence of [sic] his ability to resume work.

17. Because of the overlying psychosomatic problems resulting from the prolonged period of inactivity insofar as gainful employment is concerned, it was recommended that the claimant return to work with restricted lifting and bending until thus [sic] time as he was

---

[3] On cross-examination, Dr. Finkelhor testified:

Q. If I understood your prior testimony—clarify me if I am wrong—I think you said that when you first examined Mr. Stiffler, he did have psychosomatic problems.

A. That's right. I felt that the explanation for the prolongation of his symptoms could be due to psychological and emotional stress factors.

[4] As to the cause of Mr. Stiffler's psychosomatic problems, Dr. Fingelhor testified:

Q. Doctor, I will ask you do you have an opinion through a reasonable degree of medical certainty as to that origin?

A. I would say I don't think it was the injury. I don't think that this man is afraid of injury or that this man is afraid of work. It isn't as though the work is a threatening experience, but I didn't come up with a psychological basis.

physically and emotionally adjusted to the resumption of work.

18. Effective October 6, 1980, the claimant had recovered from his injury of May 3, 1977, and was able to resume his employment, as a stockman, with his employer.

Accordingly, the referee concluded that A & P had shown by "competent, credible, substantial, unequivocal and uncontradicted evidence" that Mr. Stiffler had "recovered from his injuries and disabilities" on October 6, 1980, the date of the claimant's last visit with Dr. Finkelhor.

Without taking additional testimony, the board modified the referee's order by suspending rather than terminating Mr. Stiffler's benefits. The board decided that the claimant's psychological problems were injury-related and constituted a "residual disability," stating:

> However, the Referee also found the Claimant was suffering from psychological and emotional problems "not related to his injury, but related to the long period that he had not worked and his eroded confidence of his ability to resume work." (Finding of Fact No. 16). We think the Referee erred in determining this was not as a result of the "injury." The period of emotional overlay must also be as a result of the injury. Thus ... it was legal error to terminate in light of a finding which indicates a residual disability.

Only Mr. Stiffler has appealed the board's order, contending that the board should not have suspended his benefits because it concluded that he suffers from a residual disability related to his injury; accordingly, Mr. Stiffler argues that we should remand his case to the referee to determine if he is totally or partially disabled and if partially disabled, to establish the ex-

tent of his entitlement to weekly wages under sections 306(b)[5] and 309[6] of The Pennsylvania Workmen's Compensation Act. We disagree.

In a termination proceeding, the employer bears the burden of proving that the claimant's disability has ceased or is no longer the result of the injury sustained in the course of employment. *Everett v. Workmen's Compensation Appeal Board*, 67 Pa. Commonwealth Ct. 459, 447 A.2d 700 (1982). Where, as here, the party with the burden of proof has prevailed below, we limit our scope of review to determining whether there is a violation of constitutional rights or an error of law or whether substantial evidence supports the findings of fact. *Id.*

Here, both physicians testified that Mr. Stiffler is no longer disabled and is capable of returning to work.[7] *See Fashion Prints v. Workmen's Compensation Appeal Board*, 57 Pa. Commonwealth Ct. 250, 425 A.2d 1221 (1981) (physician's unequivocal opinion that disability has ceased will support decision to terminate benefits). *Cf. Mickles v. Workmen's Compensation Appeal Board*, 59 Pa. Commonwealth Ct. 109, 112, 428 A.2d 1035, 1036 (1981) (unequivocal medical testimony of physician establishing that employee can return to work supports action for suspension of benefits).

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512.

[6] 77 P.S. §582.

[7] Although "Dr. Davison recommended . . . [Mr. Stiffler's] return to his employment with restrictions on lifting weights over fifty pounds on a repetitive basis" (Finding of Fact 12) and that "it was recommended that the claimant return to work with restricted lifting and bending until thus [sic] time as he was physically and emotionally adjusted to the resumption of work" (Finding of Fact 17), the referee's finding and conclusion of complete recovery necessarily imports that such restrictions will not prevent Mr. Stiffler from performing his pre-injury duty of "stocking shelves with merchandise weighing 40-50 pounds" (Finding of Fact 4).

Moreover, the board affirmed the referee on that point, stating:

We will affirm the Referee on his finding the Claimant could return to his usual job, and do so on the basis this finding is supported by Dr. Finkelhor's testimony.

Thus, as to the existence or non-existence of a compensable disability, the referee and the board concurred that Mr. Stiffler is capable of returning to work. *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 134, 135-36, 415 A.2d 450, 451 (1980) (for purposes of workmen's compensation, "disability" is synonymous with "loss of earning power"; accordingly, there can be no manifestation of disability where the claimant is able to continue at the former position).

Unfortunately, the board also labeled Mr. Stiffler as subject to a "residual disability," a term for which there is no statutory authority. *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 412, 415-16, 391 A.2d 14, 16 (1978) (total and partial disability are only forms of compensable disability recognized by Act; "residual disability" has no statutory basis). Apparently the board's terminology has led Mr. Stiffler to conclude that the board considered him to be partially disabled. We believe, however, that in (1) affirming the referee on the issue of Mr. Stiffler's current employability and by (2) suspending rather than terminating Mr. Stiffler's benefits, the board concluded that his disability has "temporarily ceased,"[8] a statutorily-recognized basis

---

[8] Section 413 of the Act, *as amended,* 77 P.S. §772, states, in pertinent part:

A referee designated by the department may, at any time, modify, reinstate, *suspend,* or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department of its referee, upon petition filed

for suspending benefits. In taking exception to the referee's failure to find causation, the board concluded only that Mr. Stiffler's currently non-disabling emotional and psychological problems are related to his injury and may give rise to disability claims in the future.[9]

Accordingly, we affirm.

### ORDER

Now, April 7, 1983, the order of the Workmen's Compensation Appeal Board, Appeal No. A-80965, is affirmed.

---

by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has *temporarily* or finally *ceased,* or that the status of any dependent has changed. (Emphasis added.)

[9] A & P contends that we should reverse the board because, without taking additional evidence, it had no authority to decide that a causal relationship exists between Mr. Stiffler's psychological and emotional state and his injury. *Compare Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973) (referees are ultimate factfinders where board takes no additional testimony and board must accept such factual determinations when competent evidence supports findings) *with Empire Kosher Poultry, Inc. v. Workmen's Compensation Appeal Board,* 43 Pa. Commonwealth Ct. 394, 397-98 n. 3, 402 A.2d 561, 563 (1979) (without taking additional testimony, board erred by finding causation between injury and claimant's condition of hysterical neurosis when referee rejected psychiatrist's testimony as incredible).

However, because A & P did not cross appeal, we have no occasion to address this issue.