THE STATE, EX REL. HORNE, APPELLEE, *v.* GREAT LAKES CONSTRUCTION COMPANY, APPELLANT.

[Cite as State, ex rel. Horne, *v.* Great Lakes Construction Co. (1985), 18 Ohio St. 3d 79.]

(No. 83-1961—Decided July 3, 1985.)

*Michael J. Muldoon,* for appellee.

*Thompson, Hine & Flory* and *Henry B. Bruner,* for appellant.

*Per Curiam.* The issue in this case is whether appellee had a disability which prevented him from returning to his former position of employment. We hold that he had such a disability and, therefore, affirm the judgment of the court of appeals.

*State, ex rel. Ramirez,* v. *Indus. Comm., supra,* controls the determination of this case. While we recognize that *Ramirez* has caused some confusion in the law of workers' compensation (such as its failure to distinguish between temporary total and temporary partial disability), we nevertheless follow *Ramirez* as having been recently announced as the law of Ohio. In *Ramirez,* we held at 632:

"* * * 'An employee is entitled to be paid temporary total disability when injured *and unable to work* until one of the following three things occur: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to *his former position of employment,* or (3) the temporary disability has become permanent.' " (Emphasis added.)

The phrase "and unable to work" means the workers' compensation claimant is unable to return to his former position of employment. The phrase "former position of employment" means the position the claimant held when he was injured. We have reviewed the entire record in the case at bar, and conclude there is no evidence to show appellee is physically capable of returning to work as a truck driver. For example, Dr. Dennis B. Brooks examined appellee on June 5, 1979. Based on that examination, Dr. Brooks concluded:

"If the claimant's [appellee's] occupation as a truck driver is taken into consideration, then he remains temporarily and totally disabled at the present time, and will actually be permanently and totally disabled from this occupation unless reconstructive surgery is undertaken."

Dr. David S. Postlewaite, a plastic surgeon, examined appellee on April 13, 1981. Based on this exam, Dr. Postlewaite concluded:

"If the patient [appellee] does not undergo further reconstructive surgery then he is probably not capable of employment. He certainly cannot work as a truck driver with his leg in its present condition. It is possible that with further reconstructive procedures that he would be employable possibly even as a truck driver."

Since there is no evidence to support the Industrial Commission's factual finding, the commission abused its discretion, and the remedy of mandamus is available to appellee. *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66]. Therefore, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

C. BROWN, J., concurs separately.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. Today we are carefully and correctly applying *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 632 [23 O.O.3d 518], in holding that a claimant is entitled to a writ of mandamus directing the Industrial Commission "to order payment of temporary total disability" to the claimant. *Ramirez, supra,* is crystal clear. It creates no confusion in workers' compensation law because of any "failure to distinguish between temporary total and temporary partial disability." As reflected in the syllabus in *Ramirez,* that case was concerned solely with the issue of temporary total disability, and not with the issue of temporary partial disability or the elements thereof. To discuss temporary partial disability in *Ramirez, supra,* would have been *obiter dictum,* and more likely to cause confusion than to avoid it.

LOCHER, J., dissenting. I concur with Justice Holmes' dissent and feel compelled to add my own observation that gainful employment is a necessary component of physical and spiritual well-being. It is counterproductive to overemphasize remuneration over rehabilitation or to offer any disincentives to workers from pursuing work which may provide a position equal to or better than a prior position vacated by reason of partial physical disability. As I noted in my dissent to *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 638-639 [23 O.O.3d 518]:

"The reason that the disability, and therefore the compensation, is *temporary* is so that those who can work will get back to work."

I would reaffirm that position and accordingly dissent.

HOLMES, J., dissenting. In my view, the precise question presented for review is whether an employee suffers from temporary total disability

under R.C. 4123.56 when he is able to perform less burdensome duties for his employer, but is prevented from returning to his former, more strenuous, position of employment. While I agree that an analysis herein necessarily includes a review of this court's holding in *State, ex rel. Ramirez, v. Indus. Comm.* (1982), 69 Ohio St. 2d 630 [23 O.O.3d 518], I differ from the majority in that I believe a realignment of the pertinent law is warranted. Therefore, I dissent.

Relative to this appeal, R.C. 4123.56 provides:

"In the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of his average weekly wage so long as such disability is total * * *. Payments shall continue pending the determination of the matter, however payment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment."

In *Ramirez, supra,* a majority[1] of this court held that "[u]nder R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment." *Id.* at syllabus. This holding was an incomplete interpretation of the statute in that it provides authority today for a claimant to unjustly refuse a less burdensome position which he is capable of performing and still receive compensation. The precise type of work should not determine whether an employee is disabled under the statute. Rather, such disability contemplates an inability on the part of the employee to perform any work in which he has the experience and capacity to perform. See *Shaw* v. *Gooch Feed Mill Corp.* (1981), 210 Neb. 17, 312 N.W. 2d 682; *Findorff* v. *Pinkerton's, Inc.* (Minn. 1980), 295 N.W. 2d 373.

R.C. 4123.56 should be construed to require an employee to return to work if he is capable of doing so. The purpose of temporary disability compensation is to encourage injured employees to accept suitable employment rather than sitting idle and contemplating their misfortune. *Savage* v. *Claussner Hosiery Co.* (Ky. 1964), 379 S.W. 2d 473. Therefore, when an injured employee presents a temporary total disability claim pursuant to R.C. 4123.56 on the basis that he is unable to obtain work due to his limited physical condition, the employer should be able to defend the claim by establishing that the employee has unjustly refused suitable work. See 2 Larson, Law of Workmen's Compensation (1983) 10-164.166 to 10-164.173, Section 57.66.[2]

---

[1] The four-man majority was comprised of three members of this court and one visiting appellate judge.

[2] Other jurisdictions which follow this rule of law include: Federal, *Glover* v. *South Central Bell Tel. Co.* (C.A.5, 1981), 644 F. 2d 1155; Georgia, *Coats & Clark, Inc.* v. *Thompson*

Procedurally, the employer must bear the initial burden of proving that it made a good-faith offer of suitable work within the claimant's residual capacity. Generally, this burden would be satisfied with sufficient medical evidence which indicates that the employee can perform the tasks involved in the offered position. The burden would then shift to the employee to show that he is justified in refusing the offer of modified work. *Talley, supra; Chamberlain Corp., supra.*

Stated another way, where medical testimony establishes that an employee could perform light work with specified limitations and the employer in unquestioned good faith offered work suitable to the injured employee's diminished capacity, the employee's failure to accept the position would, in most instances, preclude a finding that he suffered loss of earning capacity for the duration of the job offer. In addition, relevant evidence of suitable work would include the employee's education and vocational capacity as well as any physical limitations.

I am also compelled to address the drastic increase in temporary total disability claims brought about by *Ramirez, supra.* Many injuries which were traditionally considered temporary partial disability under R.C. 4123.57(A) are now viewed as temporary total under the *Ramirez* ruling. This has caused a dramatic proliferation in the expenditure of revenue for temporary total disability compensation.[3]

---

(1983), 166 Ga. App. 669, 305 S.E. 2d 415; *Liberty Mut. Ins. Co.* v. *Walthall* (1979), 151 Ga. App. 372, 259 S.E. 2d 647; Kentucky, *Wiard* v. *Ken-Wel, Inc.* (Ky. 1967), 419 S.W. 2d 765; *Savage, supra;* Maine, *Delano* v. *South Portland* (Me. 1979), 405 A. 2d 222; Michigan, *Bower* v. *Whitehall Leather Co.* (1981), 412 Mich. 172, 312 N.W. 2d 640; *Christiansen* v. *Eaton, Yale & Towne, Inc.* (1979), 89 Mich. App. 440, 280 N.W. 2d 463; *McKinney* v. *Uniroyal, Inc.* (1978), 82 Mich. App. 348, 266 N.W. 2d 820; Minnesota, *McClish* v. *Pan-O-Gold Baking Co.* (Minn. 1983), 336 N.W. 2d 538; *Findorff, supra; Morrison* v. *Merrick's Super Market, Inc.* (1974), 300 Minn. 535, 220 N.W. 2d 344; Nebraska, *Shaw, supra;* New Mexico, *Schober* v. *Mountain Bell Tel.* (App. 1980), 96 N.M. 376, 630 P. 2d 1231; *Medina* v. *Zia Co.* (App. 1975), 88 N.M. 615, 544 P. 2d 1180; Oregon, *Bohnke* v. *Employee Benefits Ins. Co.* (1982), 55 Ore. App. 977, 640 P. 2d 685; *Burks* v. *Western Irrigation & Equip. Co.* (1978), 36 Ore. App. 587, 586 P. 2d 788; *Christensen* v. *Stayton Canning Co.* (1977), 31 Ore. App. 1291, 572 P. 2d 366; Pennsylvania, *Stiffler* v. *Workmen's Comp. App. Bd.* (1983), 73 Pa. Commw. 300, 458 A. 2d 634; *Wilson* v. *Commonwealth Bur. of Vocational Rehab.* (1981), 61 Pa. Commw. 41, 432 A. 2d 656; *Mickles* v. *Workmen's Comp. App. Bd.* (1981), 59 Pa. Commw. 109, 428 A. 2d 1035; *Stocks* v. *Workmen's Comp. App. Bd.* (1979), 47 Pa. Commw. 193, 407 A. 2d 914; *Philco Ford Corp.* v. *Engel* (1975), 21 Pa. Commw. 345, 345 A. 2d 790; *Chamberlain Corp.* v. *Pastellak* (1973), 7 Pa. Commw. 425, 298 A. 2d 273; Rhode Island, *Emma Pendleton Bradley Hosp.* v. *Agli* (1973), 112 R.I. 472, 311 A. 2d 842; *Hassenfeld Bros., Inc.* v. *Wolowicz* (1968), 104 R.I. 620, 247 A. 2d 834; Virginia, *Talley* v. *Goodwin Bros. Lumber Co.* (1982), 224 Va. 48, 294 S.E. 2d 818.

[3] The Ohio Bureau of Workers' Compensation provides a quarterly statistics report on the amount of increase or decrease in gross compensation awarded for a particular type of benefit which has taken place since the same quarter of the previous year. After this court handed down the *Ramirez* decision, the following increases in temporary total disability compensation have occurred:

Prior to *Ramirez, supra,* there was a clear distinction between temporary partial and temporary total disability.[4] To understand the difference in compensation benefits for such disabilities, one must recognize the purpose for each. Temporary total disability benefits are designed to compensate for a *loss of earnings* as it is the condition of total disability which prevents the employee from working, and he thereby suffers loss of wages. If an employee receives his full wages during a period of total disability, he is not entitled to temporary total disability compensation because he has suffered no loss upon which the benefit is based. *State, ex rel. Rubin,* v. *Indus. Comm.* (1938), 134 Ohio St. 12 [11 O.O. 382].

The basis for the payment of temporary partial benefits is *impairment in earning capacity* as such disability contemplates that the employee has returned to some type of work, but is unable to earn as much as before the injury. Young, Workmen's Compensation Law (2 Ed. 1971), at 134 and 137, Sections 7.12 and 7.16. Although temporary total disability necessitates only the consideration of the loss of wages, temporary partial disability looks to the degree of physical disability as well as earning capacity. While earning capacity is not statutorily defined, case law teaches that it consists of not only actual earnings, but also includes any future increase or decrease in wages. *Indus. Comm.* v. *Royer* (1930), 122 Ohio St. 271; *State, ex rel. Stanek,* v. *Indus. Comm.* (1982), 4 Ohio App. 3d 63. In other words, if the injured employee can establish that he was due for a pay raise before his injury, the raise must be taken into account in

| Year | Percentage of Increase in Gross Compensation |
|---|---|
| second quarter of 1982 | 13.5 |
| third quarter of 1982 | 15.2 |
| fourth quarter of 1982 | 24.7 |
| first quarter of 1983 | 9.9 |
| second quarter of 1983 | 11.1 |
| third quarter of 1983 | 8.7 |
| fourth quarter of 1983 | 16.3 |
| first quarter of 1984 | 20.3 |
| second quarter of 1984 | 23.3 |
| third quarter of 1984 | 24.7 |
| fourth quarter of 1984 | 26.3 |

[4] It should be noted that the provision for temporary partial disability benefits is made in the first paragraph of R.C. 4123.57(A), even though it is not denominated as such. The provision provides, in relevant part:

"Partial disability compensation shall be paid as follows * * *:

"(A) In case of injury or occupational disease resulting in partial disability other than those exclusively provided for under division (C) of this section, the employee shall receive per week sixty-six and two-thirds per cent of the impairment of his earning capacity which results from the injury or occupational disease during the continuance thereof, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, but not in a greater sum in the aggregate than seventeen thousand five hundred dollars."

determining his impairment in earning capacity even though he has accepted a less remunerative position. Young, *supra,* at 135, Section 7.14.

Based on the foregoing, it seems quite clear that temporary partial disability compensation pursuant to R.C. 4123.57(A) may be utilized to "make up" any difference in loss of earning capacity when an employee accepts a less burdensome and less paying position of employment. In fact, Young states that this was the very purpose of such compensation. *Id.* at 137, Section 7.16. Recognizing the importance of temporary partial disability benefits to workers, the amount of benefits that a claimant can receive was increased by the General Assembly in 1979 to $17,500. R.C. 4123.57(A).

Currently, however, there is no longer any incentive for the partially injured employee to return to work and receive temporary partial disability payments for a loss in earning capacity. The injured worker is economically rewarded by *Ramirez* for refusing employment which he could otherwise perform, as he is entitled to a much greater amount of benefits without a statutory maximum if he is deemed temporarily totally disabled. This is not the purpose of workers' compensation law.

Accordingly, I would reverse the judgment of the court of appeals and overrule the *Ramirez* case.

WRIGHT, J., concurs in the foregoing dissenting opinion.