DECISION
{¶ 1} In this original action, relator, Anthony R. Flunder, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its January 6, 2005 order denying his application for temporary total disability ("TTD") compensation.
 {¶ 2} On August 31, 2004, relator sustained an industrial injury while employed by respondent, Textileather Corporation ("Textileather"), a self-insured employer. Relator slipped in some oil and fell, injuring his back, right shoulder and neck. Textileather accepted the claim, which was recognized by the commission for "lumbar sprain; neck sprain; right shoulder sprain," and assigned number 04-862387.
 {¶ 3} On the same day as the accident, relator sought treatment at the emergency room of Bay Park Community Hospital where Kenneth L. Mapes, M.D., evaluated relator's condition and diagnosed lumbar and right shoulder strain. Relator was given pain medication, released and told "to take 4 Advil, rest, ice, [and take] off work for two days." Dr. Mapes also instructed relator to follow-up with Brian F. Hoeflinger, M.D., at Occu-Health.[1]
 {¶ 4} On September 1, 2004, relator went to Occupational Care Consultants where he saw Dr. Thomas Lieser. Dr. Lieser diagnosed relator with recurrent lumbar strain, cervical strain and shoulder strain. However, Dr. Lieser did clear relator to return to work with restrictions beginning the same day. Specifically, Dr. Tom Lieser released relator to work with the limitations that he could not be required to bend, do any overhead work or lift more than ten pounds. The doctor also noted that relator was scheduled to see Dr. Hoeflinger "later this month." There is no indication in the record that relator kept that appointment.
 {¶ 5} On the same day, Textileather found a temporary transitional duty job assignment for relator — inspecting paper for tears. The offer indicated that relator would receive his regular wages while on transitional duty and that the transfer was effective immediately. A Textileather supervisor called relator to inform him of the offer. According to the supervisor's notes, relator verbally refused the offer. Relator received the same offer in written form on September 7, 2004, via certified mail. He did not respond to the offer.
 {¶ 6} On September 8, 2004, relator saw his regular physician, Dr. Frank Abbati. After the examination, Dr. Abbati noted that relator was experiencing pain and loss of motion in his shoulder and lower back. In the section of his notes labeled "Plan," Dr. Abbati indicated that relator was "off work" and renewed his prescription for pain medication. Dr. Abbati continued to treat relator over the next several months, seeing him on September 24, October 1, and November 19, 2004.[2] Dr. Abbati's treatment notes contained no instructions or limitations regarding relator's ability to work.
 {¶ 7} After the November 19, 2004 examination, relator filed a request for TTD compensation for his allowed conditions. A C-84 form completed the same day by Dr. Abbati supported relator's application. On the C-84, Dr. Abbati indicated that relator was both unable to return to his former position of employment and unable to return to any other employment, including light duty or alternative assignments. Dr. Abbati certified TTD beginning August 31, 2004 and lasting through an approximated return-to-work date of December 27, 2004.
 {¶ 8} On November 23, 2004, a district hearing officer ("DHO") considered relator's application for TTD compensation. Given the evidence on record, the DHO found that relator was released to work with restrictions on September 1, 2004, and was offered a job within the parameters of those medical restrictions, which he refused. Thus, the DHO denied relator's application.
 {¶ 9} Relator appealed, and a staff hearing officer ("SHO") heard the matter on January 6, 2005. The SHO cited two pieces of evidence supporting relator's application for TTD compensation: the report of relator's trip to the emergency room on August 31, 2004, and Dr. Abatti's November 19, 2004 C-84 form. The SHO acknowledged that Textileather twice offered relator light-duty work matching the restrictions denoted by Dr. Lieser's September 1, 2004 examination, both of which were refused. The SHO expressed understanding of relator's desire to see his prior physician before responding to Textileather's offer. Still, with no other work restrictions or prohibitions reported by any other physician of record, the SHO concluded that relator's failure to respond to the offer of light-duty work precluded his entitlement to TTD compensation. Thus, the SHO also denied relator's request for disability compensation. The commission refused relator's subsequent administrative appeal, rendering the SHO's decision final.
 {¶ 10} On November 17, 2005, relator filed this mandamus action seeking to have the commission's order vacated and an order granting TTD compensation from September 1, through December 7, 2004 issued. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. On April 28, 2006, the magistrate issued her decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate found that the commission failed to address the issue presented and analyzed relator's motion for TTD compensation using the wrong standard. Specifically, the magistrate determined that the parties' arguments — and the commission's conclusions — addressed the termination of already granted TTD benefits rather than the pertinent question of whether relator was entitled to such compensation at the outset.
 {¶ 11} Accordingly, the magistrate found that the commission had abused its discretion by failing to determine relator's initial right to the sought compensation. Thus, the magistrate recommended that the court issue a writ of mandamus ordering the commission to vacate its previous determination and to reconsider relator's request for TTD compensation based upon whether he presented sufficient evidence to establish entitlement to compensation for the given period of time.
 {¶ 12} The commission filed timely objections to the magistrate's decision. The commission submits that the magistrate erred in finding that the commission abused its discretion or failed to answer the threshold question of whether relator was entitled to TTD compensation. The commission further contends that it is not error to deny TTD compensation where the injured worker refuses a written job offer of suitable employment. As such, the commission requests that we reject the magistrate's recommendation and deny relator's requested writ of mandamus.
 {¶ 13} The payment of TTD compensation, and the question of whether an injured worker is entitled to TTD compensation as a result of a work-related injury, is governed by R.C. 4123.56. While not specifically defined within the statute, the Supreme Court of Ohio has construed the term "temporary total disability" as a "disability which prevents a worker from returning to his former position of employment." State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, syllabus. TheRamirez court extracted this definition from the language of R.C.4123.56, which then read:
 "In the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of his average weekly wage so long as such disability is total, * * *.
 "Payments shall continue pending the determination of the matter, however payment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is capable of returning to his former position.
 "After two hundred weeks of temporary total disability benefits the claimant shall be scheduled for an examination by the Industrial Commission medical department for an evaluation to determine whether or not the temporary disability has become permanent * * *."
Id. at 631-632. Continuing, the court approved and adopted the appellate court's assertion that:
 * * * "An employee is entitled to be paid temporary total disability when injured and unable to work until one of the following three things occur: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) the temporary disability has become permanent."
Id. at 632.
 {¶ 14} Returning to the present day, Ohio law still states that "[a] temporarily and totally disabled employee is by definition physically unable to perform the duties of his or her former position of employment." Coolidge v. Riverdale Local Sch. Dist., 100 Ohio St.3d 141,2003-Ohio-5357, ¶ 44, citing Ramirez. While that basic definition has not changed, the language of R.C. 4123.56 has been revised. As is relevant, R.C. 4123.56(A) now states:
 * * * [I]n the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of the employee's average weekly wage so long as such disability is total * * *. * * * Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement. * * *
 After two hundred weeks of temporary total disability benefits, the medical section of the bureau of workers' compensation shall schedule the claimant for an examination for an evaluation to determine whether or not the temporary disability has become permanent. * * *
(Emphasis added.)
 {¶ 15} Applying the holding and rationale of Ramirez to the new language of R.C. 4123.56, Ohio law mandates that an employee, such as relator, is considered temporarily totally disabled when he suffers an injury that prevents him from returning to his former position of employment, i.e., the position he held at the time of the injury.[3]
Additionally, a temporarily totally disabled worker is entitled to TTD compensation until — or unless — one of the following four events occur: (1) he has returned to work; (2) his treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment; (3) work within his physical capabilities is made available by the employer or another employer; or (4) he has reached maximum medical improvement.
 {¶ 16} Here, the commission determined that relator was not entitled to TTD compensation because of the third enumerated reason: the employer made available work within his physical capabilities. The day after relator was injured, Textileather offered him work that fell within the physical restrictions listed by Dr. Lieser. Thus, relator was precluded from receiving TTD compensation by the language of the statute itself, i.e., "payment shall not be made for the period when * * * work within physical capabilities of the employee is made available by the employer." R.C. 4123.56(A).
 {¶ 17} The magistrate mistakenly concluded that the commission never made a determination as to relator's basic qualification for TTD compensation. While the commission is certainly empowered to terminate previously existing TTD compensation because an appropriate job offer has been made and rejected, the statute is quite clear that such an offer also immediately disqualifies a claimant from receiving TTD benefits. In this case, because the injury and the availability of suitable work occurred practically simultaneously, relator was never entitled to TTD compensation. In other words, the commission did address the question of whether relator was entitled to TTD following his work-related injury; the answer was simply no. Therefore, we disagree with the magistrate on this point. The commission's objections to the magistrate's decision are sustained.
 {¶ 18} We are still required to address relator's primary argument in support of a writ of mandamus. Relator insists that Dr. Abbati — not Dr. Lieser — is his treating physician, and, thus, the only physician who could validly authorize his return to work with, or without, restrictions. Furthermore, relator contends that Dr. Abbati never released him to any form of work, negating the validity of Textileather's offer of temporary transitional employment. Extending this argument to its logical conclusion, relator submits that there was never a period of time when any employer offered work within his physical capabilities precluding his entitlement to TTD compensation during the period certified by Dr. Abbati.
 {¶ 19} Relator bases his argument on the definition of a "treating physician" found in Ohio Adm. Code section 4121-3-32, which is dedicated to claims procedures regarding temporary disability. Specifically, Ohio Adm. Code 4121-3-32(A)(4) provides:
 "Treating physician" means the employee's attending physician of record on the date of the job offer, in the event of a written job offer to an employee by an employer. If the injured worker requested a change of doctors prior to the job offer and in the event that such request is approved, the new doctor is the treating physician.
The term "attending physician" is not defined within the Ohio Administrative Code; however, the code does address a claimant's freedom to choose his physician of record.
 {¶ 20} Ohio Adm. Code 4123-7-10 mandates that "[a] worker who sustained an injury * * * shall have free choice to select a licensed physician for treatment." The claimant's choice is limited to "the initial selection of medical service," not including emergency treatment. Ohio Adm. Code 4123-7-10(A) and (B). Furthermore, "[a]s a general rule, once a claimant goes to a private physician for treatment other than on an emergency basis, the claimant is deemed to have made a choice of physician and would need authorization to change." Ohio Adm. Code4123-7-10(C).[4]
 {¶ 21} The record demonstrates that Dr. Lieser was the first physician relator saw for treatment after his initial evaluation in the emergency room. Relator made no attempt to gain authorization to change his physician of record. Ohio Adm. Code 4123-7-10; 4123-7-11. On these facts, Dr. Lieser qualifies as relator's physician of record, who could — and did — release relator to work with restrictions.
 {¶ 22} Nevertheless, relator argues that Dr. Lieser cannot be considered his physician of record because he saw Dr. Lieser fewer than three times. We disagree. Relator relies on that part of Ohio Adm. Code4123-7-10(C) regarding cases involving self-insured employers that states "[i]f the injured * * * worker has made a declaration or has used the services of the company physician at least three times, the claimant will be regarded as having exercised the right of free choice of physician." However, that provision is inapposite to the case at hand as it involves circumstances not currently present. There is no indication in the record that relator made a formal declaration other than relator's assertion that Dr. Abbati is his treating physician. Additionally, Dr. Lieser is a private physician practicing with Occupational Care Consultants. While Textileather may have referred relator to Dr. Lieser for treatment, the company does not employ Dr. Lieser; therefore, he is not a "company physician." Only when an injured worker has seen a company physician three times will the commission conclusively presume that the worker intended to choose that physician — rather than a private physician — as his physician of record. Here, we need not make that assumption, as relator voluntarily sought treatment from Dr. Lieser. As the first doctor from whom non-emergency treatment was sought and obtained, Dr. Lieser is claimant's physician of record.
 {¶ 23} Accordingly, Dr. Lieser was qualified to authorize relator's return to work within the given restrictions on his physical capabilities. The commission acted within its discretion in considering Dr. Lieser's report as evidence that relator had been offered employment within the physical restrictions denoted but failed to respond to that offer. Dr. Lieser's report and Textileather's written job offer comprise "some evidence" supporting the commission's denial of TTD.
 {¶ 24} After an independent review, we conclude that the commission determined that relator was not entitled to TTD compensation because relator refused a tendered offer of work within his physical capabilities. The commission did not abuse its discretion in that ruling. To the extent that the magistrate held otherwise, we sustain the commission's objections. In all other respects, we adopt the magistrate's decision. The requested writ of mandamus is denied.
Objections sustained;
 Writ of mandamus denied.
KLATT, P.J., and SADLER, J., concur.
 (APPENDIX A) IN MANDAMUS {¶ 25} Relator, Anthony R. Flunder, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation on the grounds that he had refused a suitable job offer within his restrictions with respondent Textileather Corporation ("employer") and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 26} 1. Relator sustained a work-related injury on August 31, 2004, when he slipped in some oil and fell, hurting his back, shoulder and arm. Relator had prior surgery on his back in 2001.
 {¶ 27} 2. Relator presented at ProMedica Health System on August 31, 2004, and was seen by Kenneth L. Mapes, M.D., who diagnosed relator as follows: "1. Status post fall. 2. Lumbar strain. 3. Right shoulder strain." Dr. Mapes advised relator to stay off work for two days and released him with the following course of treatment:
 The patient was seen and evaluated. Was given Toradol 60 mg and Nubain 10 mg intramuscularly. He was much more comfortable. He was given 4 Percocet to go, copies of x-rays to go. I gave him a prescription for 25 Percocet. Told him to take 4 Advil, rest, ice, off work for two days. Told to follow-up with Dr. Hoeflinger and Occu-health. He is told to return if bowel or bladder incontinence or paralysis.
 {¶ 28} 3. On September 1, 2004, relator was seen by Dr. Tom Lieser with Occupational Care Consultants. Dr. Lieser indicated that relator could return to work with restrictions on September 1, 2004. Relator's restrictions included no bending, no lifting greater than ten pounds, and no overhead lifting. Dr. Lieser diagnosed relator as follows: "1. Recurrent lumbar strain. 2. Cervical/[right] shoulder strain." In the comments section, Dr. Lieser told relator to follow up with Brian E. Hoeflinger, M.D.
 {¶ 29} 4. On September 1, 2004, the employer made an oral job offer to relator for a job within his physical restrictions as set forth by Dr. Lieser. The employer followed this oral job offer with a written job offer.
 {¶ 30} 5. At the bottom of the written job offer, there is a notation indicating that relator verbally refused the job offer and refused to return to work pursuant to a phone call made to relator on September 1, 2004 at 3:15 p.m.
 {¶ 31} 6. Relator admits that he verbally refused the job offer and that he did not respond to the written job offer when he received it.
 {¶ 32} 7. On September 8, 2004, relator was seen by his treating physician Frank Abbati, M.D., who noted that relator had pain and loss of motion regarding his shoulder and low back, continued him on Percocet and noted that relator was "off work."
 {¶ 33} 8. Relator was seen again by Dr. Abbati on September 24, October 1 and November 19, 2004. At no time did Dr. Abbati list any work restrictions for relator.
 {¶ 34} 9. Relator was examined by Dr. Hoeflinger on November 8, 2004. Dr. Hoeflinger noted that relator continued to have ongoing low back pain and recommended the following:
 Given the stable appearance of his MRI, I have recommended that he undergo a course of physical therapy for the next six weeks. In addition, I will have him undergo lumbar flexion and extension X-rays to ensure there is normal stability of his spine. Tony will be scheduled to return to my office in six weeks for reevaluation.
 {¶ 35} 10. Thereafter, Dr. Abbati completed a C-84 certifying relator as temporarily totally disabled beginning August 31, 2004, with an estimated return-to-work date of December 27, 2004.
 {¶ 36} 11. Relator's motion for TTD compensation was heard before a district hearing officer ("DHO") on November 23, 2004. At that time, the DHO indicated that the employer had allowed relator's claim for the following conditions: "lumbar sprain; neck sprain; right shoulder sprain." With regard to relator's request for TTD compensation, the DHO denied the request for the following reasons:
 Temporary Total Disability Compensation is DENIED from 09/01/2004 forward. Injured worker was released with restrictions on 09/01/2004. The Employer offered injured worker a light-duty job within those restrictions and injured worker refused to attempt the light-duty work, but did not seek alternative medical treatment until 09/08/2004.
 All evidence contained in the record has been reviewed and considered.
 The Self-Insured Employer is hereby ordered to comply with the above findings.
(Emphasis sic.)
 {¶ 37} 12. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 6, 2005, and resulted in an order modifying the prior DHO order. The SHO indicated that the claim was allowed as follows:
 The self insured employer and injured worker stipulate the a [sic] compensable event occurred on 8/31/04 when claimant fell at work. Allowance has been granted for a lumbar strain, neck strain and right shoulder strain.
 {¶ 38} Thereafter, the SHO indicated that the only contested issue was the payment of TTD compensation and noted that relator presented the following evidence of entitlement to TTD compensation:
 The only contested issue is one of temporary total compensation. The injured worker has two pieces of evidence supporting temporary benefits. One is the C-84 of Dr. Abbati 11/19/04 and the other is the emergency room report of 9/2/04.
 {¶ 39} Relative to the job offer made by the employer, the SHO noted the following:
 On 9/1/04 there was some oral discussion concerning a light duty offer. Allegedly, the injured worker declined the employer's request. This transaction is largely affirmed by the hearing officer because the employer thereafter followed up with a written job offer which was received by the claimant on 9/1/04, see certified receipt.
 After 9/7/04, per the claimant's own admission, he did not respond to the written offer of light duty proffered by the employer. This offer appears to have been made in good faith, supported by restrictions set forth by Dr. Lieser on 9/1/04. Dr. Lieser's restrictions call for extremely light work.
 The claimant orally submits that he did not want to respond to a job offer until he had seen his prior physician, Dr. Abbati. Claimant has a long history of back problems occurring, including a major surgery involving hardware. While claimant's posture may seem reasonable on its face, his failure to respond to the written job offer can not be overlooked.
 The Staff Hearing Officer searched the record for more stringent restrictions which may have been submitted by Dr. Abbati, or other physicians treating the claimant.
 In point of fact, the Staff Hearing Officer's current record contains no other work restrictions other than those forwarded by Dr. Lieser and the previously mentioned C-84 emergency room notation.
 Given claimant's failure to respond to the employer's offer of light duty, temporary total disability compensation 8/31/04 through 12/27/04 is DENIED.
(Emphasis sic.)
 {¶ 40} As such, the SHO denied relator TTD compensation.
 {¶ 41} 13. Relator's further appeal was refused by order of the commission mailed February 4, 2005.
 {¶ 42} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 43} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 44} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that he has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. DiamondFoundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 45} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. Pursuant to R.C.4123.56(A), TTD compensation is payable to a claimant unless and until four circumstances occur: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI").
 {¶ 46} In the present case, TTD compensation was denied to relator on the grounds that relator had refused to accept an offer of employment within his physical capabilities which was made by the employer the day after relator fell at work and reinjured his back. Relator's argument is that he had not been released to return to work within restrictions byhis treating physician; therefore, he believes he did not need to respond to the employer's written job offer. Ohio Adm. Code 4121-3-32
provides guidelines to be applied when determining whether or not TTD compensation may be terminated.
 {¶ 47} TTD compensation may be unilaterally terminated by a self-insuring employer if: (1) claimant has returned to work; (2) claimant's treating physician finds that claimant can return to his former position of employment or other available suitable employment; or (3) claimant's treating physician finds that claimant has reached MMI. Ohio Adm. Code 4121-3-32(B)(1)(a) through (c).
 {¶ 48} TTD compensation may be terminated after a hearing if the hearing officer finds any of the following: (1) claimant has returned to work; (2) claimant's treating physician finds that claimant can return to his former position of employment or other available suitable employment; (3) claimant is capable of returning to his former position of employment; (4) claimant has reached MMI; or (5) claimant has received a written job offer of suitable employment. Ohio Adm. Code4121-3-32(B)(2)(a) through (d).
 {¶ 49} Ohio Adm. Code 4121-3-32(A) provides certain definitions which the parties maintain are relevant to this court's determination of this matter. Specifically, relator argues that, in order to constitute a "good faith job offer of suitable employment," the job must be within relator's physical capabilities as determined by relator's "treating physician." Conversely, the employer and the commission argue that, where the matter is determined after a hearing, a "good faith job offer of suitable employment" can be any job offered by the employer which is within the restrictions determined by any doctor upon whom the hearing officer relies.
 {¶ 50} However, this case does not involve the termination of TTD compensation and none of the arguments advanced by the parties are on point. In the present case, there had not yet been an award of TTD compensation; therefore, none of the cases cited and none of the arguments advanced pertaining to when TTD compensation can be terminated are relevant. The matter was before the commission to determine whether relator was entitled to TTD compensation following his work-related injury. As stated previously, TTD compensation is payable upon a showing that a claimant has sustained a work-related injury which prevents claimant from returning to his former position of employment. The commission never made that determination in this case. Perhaps the commission did not find the August 31, 2004 emergency room records taking relator off work for two days and Dr. Abbati's office notes and C-84s certifying a period of temporary total disability to be credible evidence supporting an award of TTD compensation. Unfortunately, we do not know because the commission never decided the issue before it.
 {¶ 51} Because the magistrate finds that the commission failed to determine initially whether relator was entitled to TTD compensation, the magistrate finds that relator has demonstrated that the commission abused its discretion. A writ of mandamus should be granted ordering the commission to vacate its order denying relator TTD compensation based upon standards relating to the termination of TTD compensation and ordering the commission to determine whether relator presented sufficient competent, credible evidence establishing entitlement to a period of compensation.
[1] Apparently, Dr. Hoeflinger is the doctor who performed relator's previous back surgery. 
[2] Meanwhile, on November 8, 2004, relator saw Dr. Hoeflinger for a follow-up examination. Dr. Hoeflinger did not directly address relator's ability to return to his former position or to any work. The doctor did note, however, that he would like relator to undergo physical therapy over the next six weeks followed by a reevaluation. 
[3] State ex rel. Horne v. Great Lakes Const. Co. (1985),18 Ohio St.3d 79, 80. 
[4] Effective February 15, 2005, the legislature amended Ohio Adm. Code4123-7-10 and rescinded Ohio Adm. Code 4123-7-11. All references to these sections of the administrative code are to the versions in effect at the time the commission issued its order.