DECISION
{¶ 1} Relator, Douglas Gibson, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator temporary total disability ("TTD") compensation and to order the commission to grant said compensation. *Page 2 
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate noted that the commission relied upon the report of Dr. Bloomfield in denying relator TTD compensation. The magistrate determined that Dr. Bloomfield's report did not constitute some evidence upon which the commission could rely because Dr. Bloomfield was unaware that relator's employment ended due to his employer's termination of the transitional work that had previously been available to relator. Therefore, the magistrate has recommended that this court issue a writ of mandamus ordering the commission to vacate its order denying relator TTD compensation, and to issue a new order either granting or denying the requested period of compensation without considering Dr. Bloomfield's report.
 {¶ 3} Both the commission and the employer, C.W. Demary Service, Inc. ("C.W. Demary"), filed objections to the magistrate's decision. The commission argues that the magistrate erred in determining that Dr. Bloomfield's report does not constitute some evidence. The commission contends that Dr. Bloomfield's failure to know the reason why relator could not continue his employment with C.W. Demary does not invalidate his report. C.W. Demary objects on essentially the same basis. We find these objections well-taken.
 {¶ 4} The commission points out that a non-examining physician is required to accept all clinical findings of the examining doctors, but not the opinion drawn therefrom. State ex rel. Wallace v. Indus.Comm. (1979), 57 Ohio St.2d 55, at 59-60. Here, Dr. Bloomfield accepted the clinical findings of relator's examining doctors. However, based *Page 3 
solely on those clinical findings, Dr. Bloomfield disagreed with the conclusion that relator was entitled to the requested period of TTD compensation. Essentially, Dr. Bloomfield disagreed with the conclusion that relator was unable to return to his former position of employment, even though he was aware that relator had been in a transitional work program. The fact that Dr. Bloomfield did not know the reason why relator was no longer working does not invalidate his opinion. This information was not relevant to his opinion. Dr. Bloomfield simply believed that the clinical findings did not support the conclusion that relator was unable to return to his former position of employment. We find that Dr. Bloomfield's report is some evidence upon which the commission could rely in denying relator TTD compensation. Therefore, we sustain the objections filed by the commission and C.W. Demary.
 {¶ 5} Following an independent review of this matter, we find that the magistrate properly determined the facts, but incorrectly applied the relevant law. Therefore, we adopt the magistrate's findings of fact but not her conclusions of law. For the reasons cited herein, we deny relator's request for a writ of mandamus.
Objections sustained; writ of mandamus denied.
 Bryant and French, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on February 20, 2008 IN MANDAMUS {¶ 6} Relator, Douglas Gibson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation. *Page 5 
Findings of Fact: {¶ 7} 1. Relator sustained a work-related injury on July 24, 2005.
 {¶ 8} 2. Relator's July 2005 MRI scan revealed varying degrees of multi-level disc desiccation and degeneration, greatest at the L4-5 level. Mild disc bulges were noted at L1-2 and L3-4. Disc bulges were also noted at L4-5 and L5-S1. The final impression was that relator had multi-level degenerative changes and disc bulges with no major changes noted from his prior 2003 MRI.
 {¶ 9} 3. Relator was seen by his treating physician, Charles B. May, D.O., on August 1, 2005. In a report dated the same day, Dr. May noted that relator saw Dr. Lingam the day after his injury. Dr. Lingam had been treating relator for a prior back injury he sustained sometime in 2004. Apparently, Dr. Lingam sent relator for an MRI scan of his lumbar spine. Dr. May noted that relator was complaining of low back pain which was worse than his previous pain. Following his findings upon physical examination, Dr. May opined that relator had sustained an "[a]cute lumbar sprain and strain, 847.2." Dr. May noted that relator has significant pre-existing degenerative disease in the lumbar spine, there is no evidence of any new herniation and, at that time, he could not diagnose any aggravation of relator's pre-existing condition. Dr. May completed a C-9 form requesting authorization for physical therapy and placed relator off work with the goal of returning him to a light duty position as soon as his pain becomes more tolerable.
 {¶ 10} 4. Respondent C.W. DeMary, Inc. ("employer"), approved the request for treatment pending allowance of the claim by the Ohio Bureau of Workers' Compensation ("BWC"). *Page 6 
 {¶ 11} 5. By order mailed August 15, 2005, relator's claim was allowed for sprain lumbar region.
 {¶ 12} 6. Relator was again seen by Dr. May on August 31, 2005. At that time, relator had finished his initial physical therapy and it was noted that relator had some improvement. However, relator continued to complain of back pain on and off with some pain and weakness into the left leg. Dr. May noted that relator was continuing to work restricted duty with the employer, participating in a transitional work program involving driving. Dr. May completed a C-9 requesting authorization for additional treatment, including trigger point injections and continued physical therapy.
 {¶ 13} 7. Dr. May authored another letter, dated September 14, 2005, apparently in response to inquiries from Jennifer Wells, a case specialist with the employer's authorized managed care organization, CareWorks. In that report, Dr. May noted:
 * * * [I]t was my understanding that Mr. Gibson was placed off work for a period of two weeks when I first saw him, which was on 08/01/05 and that he was going to then return to work in a transitional work program. My understanding of a transitional work program was that Mr. Gibson would perform any type of work available to him at the employer's place of business that did not aggravate his symptoms, and that he would progress as quickly as he could to the point where he could return to his full job without restrictions. It is my impression that in a transitional work program, it would be impossible to examine Mr. Gibson and list physical restrictions every day as he progressed. I though that this was something more of a common sense type of a program. My understanding of a return to work with "restricted duty" would be to list certain work restrictions, and those restrictions would be in place for a given number of days, weeks, or months, and then the claimant would be re-evaluated, and the restrictions either lifted or continued. In any event, that is why a Medco 14 form was not completed previously. I did complete a form and faxed to Mr. Demary [employer] in which it was noted that Mr. Gibson was returned to "restricted duty" and was to begin progression *Page 7 
towards full duty after consulting with myself. I personally talked to Mr. Demary, and Mr. Demary stated that that was all he needed from this office. It seems that there is type of a game being played between Mr. Demary and CareWorks and myself. I refuse to be placed in that type of position. I will answer either to Mr. Demary or to you but not both from this point on.
 {¶ 14} 8. Apparently, the employer denied further treatment.
 {¶ 15} 9. The next report from Dr. May is dated October 24, 2005, and is in response to the employer's request for Dr. May's opinion of whether he could release relator to perform any of four different jobs descriptions. After noting that a recent request for authorization of therapeutic injections and additional physical therapy was denied, Dr. May responded:
 * * * I cannot release Mr. Gibson to any type of work at this time as I have not examined him since 08/31/05. You note that his claim is in hearing status. I assume the reason that I have not seen Mr. Gibson is because his claim apparently is still in hearing and he does not want to incur any further bills. Again this is only an assumption. I note that he is not represented by an attorney according to our records. In regards to the denial for our C-9 request, we are going to appeal this denial. It states that I "appears to be treating a nonallowed lumbar conditions at this time." I am not sure how you have arrived at that conclusion. My request is for myofascial trigger point injections which is not treating the degenerative disk disease lumbar spine. We are treating a lumbar strain 847.2 which is myofascial in nature. We are also treating by way of physical medicine lumbar strain 847.2 which is myofascial in nature.
 {¶ 16} 10. As of December 30, 2005, the employer was no longer able to offer relator any transitional work. As such, relator was no longer working after December 30, 2005. *Page 8 
 {¶ 17} 11. Following alternative dispute resolution with CareWorks, the employer's authorized managed care organization, relator's February 9, 2006 request for the authorization of treatment was granted.
 {¶ 18} 12. The employer's appeal from the August 15, 2005 order of the BWC allowing relator's claim for lumbar sprain was finally heard by a district hearing officer ("DHO") on April 4, 2006. The DHO affirmed the prior BWC's order and relator's claim was allowed.
 {¶ 19} 13. The employer appealed and, on May 11, 2006, a staff hearing officer ("SHO") affirmed the prior DHO's order.
 {¶ 20} 14. The employer's May 26, 2006 appeal was refused by the commission by order dated June 1, 2006.
 {¶ 21} 15. On August 11, 2006, relator sought to have his claim amended based upon the June 23, 2006 report of Dr. May, wherein he stated:
 * * * Mr. Gibson suffered from a low back pain prior to 07/24/05 to the point where he was treated by Dr. Lingam, a pain management specialist. Despite the fact that Mr. Gibson suffered from previous low back pain and required medication to treat that pain, Mr. Gibson was able to perform all of the duties of his job prior to 07/24/05 without restriction. Following the date of injury on 07/24/05, Mr. Gibson's back pain accelerated to the point where he was unable to perform full work activities and in fact was unable to work at all without significant physica[l] work restrictions. As you also know, we have performed an MRI scan of the lumbar spine on Mr. Gibson and he does have multilevel degenerative disc disease of the lumbar spine, which in my medical opinion preexisted his injury on 07/24/05. It is, however, my medical opinion that Mr. Gibson aggravated this preexisting condition of multilevel lumbar degenerative disc disease as a result of [the] 07/24/05 work injury. *Page 9 
 {¶ 22} 16. In an order dated December 26, 2006, relator's request for an additional claim allowance was denied by the DHO.
 {¶ 23} 17. On February 5, 2007, an SHO vacated the prior DHO's order and allowed relator's claim for the additional condition of "aggravation of pre-existing degenerative disc disease at L3-4, L4-5 and L5-S1." The SHO reasoned as follows:
 This decision is based upon the claimant's testimony at hearing whereby he described the increase of frequency, duration and intensity of pain in his lower back since his 2005 lower back injury as opposed to his prior 2003 low back injury. The claimant added that since his recent injury, he has begun to feel his right leg go numb and get "ice cold." Additionally, it is noted that he was able to return to full duty work as an auto repair mechanic after his first injury, but has not returned to work for the employer since his injury in 2005.
 In his report of 08/01/2005, Dr. May acknowledged an increase in the claimant's post-injury subjective complaints. A change in his objective physical findings at the aforementioned levels is documented in the claimant's MRI results of 12/17/2003 and 07/28/2005. The Staff Hearing Officer finds Dr. May's report of 06/23/2006 to be persuasive. Dr. Lingam's report of 06/15/2004 was found to be a valuable "base line" evaluation of the claimant's lower back condition.
 {¶ 24} 18. The employer's appeal was refused by order of the commission dated February 24, 2007.
 {¶ 25} 19. Relator again sought authorization for trigger point injections and other treatment in March 2007.
 {¶ 26} 20. On March 23, 2007, relator requested TTD compensation beginning December 30, 2005, and continuing. Dr. May listed the newly allowed condition as the cause and indicated that relator had not been able to return to his former position of employment. *Page 10 
 {¶ 27} 21. A physician review was provided from Ronald J. Bloomfield, M.D., dated April 7, 2007. After noting relator's treatment, Dr. Bloomfield concluded:
 Mr. Gibson had a history of severe back pain (he was being treated with chronic narcotic therapy by a pain management specialist) at the time of his injury in July 2005. He was allowed the conditions of aggravation of his pre-existing degenerative disc disease. In a letter dated 8-31-2005, one month after his injury, Dr. May notes Mr. Gibson is working as a delivery driver with no heavy lifting and was participating in a transitional work program. He continued to have pain but was improving under Dr. May's care. The record is not clear as to what happened later that year causing Mr. Gibson to be unable to work since 12-30-2005 to the present. The objective medical record supports him suffering from chronic back pain at the time of his industrial injury and that he aggravated his pre-existing degenerative disc disease. His MRI was not significantly different from the one obtained prior to his injury. He had pain prior to the events of 7-24-2005 and was able to continue working for a number of months after his industrial accident. Through the entire time period to the present Mr. Gibson has complained of back pain and Dr. May has persistently recommended physical therapy and trigger point injections. Nothing is provided to support a period of TTD from December 30, 2005 to the present. No medical evidence is provided to support some change 12-30-2005 to support the requested period of TTD.
 {¶ 28} 22. Relator's request for TTD compensation was heard before a DHO on May 3, 2007, and was denied on grounds that relator had failed to meet his burden of proving that he was unable to perform the duties of his former position of employment due to the allowed conditions. The DHO relied upon the report of Dr. Bloomfield and noted that Dr. May had not provided any new or changed circumstances justifying TTD compensation beginning December 30, 2005. *Page 11 
 {¶ 29} 23. Relator's appeal was heard before an SHO on June 8, 2007. The SHO affirmed the prior DHO's order and denied relator's request for TTD compensation as follows:
 The claim was initially allowed for SPRAIN LUMBAR REGION. The claimant worked at light duty offered by his employer through 12/30/2005, when the employer found they could no longer honor the claimant's restrictions. Thereafter[,] the claimant was not employed. During 2006[,] the claimant sought, and eventually maintained, the additional allowance of AGGRAVATION OF PRE-EXISTING MULT I-LEVEL LUMBAR DEGENERATIVE DISC DISEASE AT L3-4, L4-5, AND L5-S1. Claimant now seeks temporary total disability compensation, dating back to the time of his layoff, in light of this additional allowance. The claim file was reviewed, at the direction of the BWC, on 04/07/2007 by Dr. Bloomfield. Dr. Bloomfield reviewed the extent of the treatment the claimant received over this period, and concluded in light of the amount and nature of this treatment that there was insufficient evidence to conclude that the claimant was temporarily and totally disabled. In light of the long period of time under consideration, and failure to seek compensation at the time the claimant was disabled, the Staff Hearing Officer finds Dr. Bloomfield's conclusion to be well supported. Relying on upon [sic] Dr. Bloomfield's report, as well as an independent review of the records, the Staff Hearing Officer finds that the claimant has not demonstrated entitlement to temporary total disability compensation as requested.
(Emphasis sic.)
 {¶ 30} 24. Relator's further appeal and request for reconsideration were refused and denied by the commission.
 {¶ 31} 25. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought *Page 12 
and that the commission has a clear legal duty to provide such relief.State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v.Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 33} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 34} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus, as more fully explained below.
 {¶ 35} In denying relator TTD compensation beginning December 30, 2005, the SHO specifically identified only one piece of evidence upon which the commission relied. *Page 13 
Specifically, the commission relied upon the report of Dr. Bloomfield. However, the magistrate concludes that Dr. Bloomfield's report does not constitute "some evidence" upon which the commission could rely.
 {¶ 36} As noted in the findings of fact, Dr. Bloomfield did specifically note that relator returned to work as a delivery driver with no heavy lifting and that he was participating in a transitional work program. Thereafter, Dr. Bloomfield makes the following statement: "The record is not clear as to what happened later that year causing Mr. Gibson to be unable to work since 12-30-2005 to the present. * * * No medical evidence is provided to support some change 12-30-2005 to support the requested period of TTD."
 {¶ 37} As noted in the findings of fact, it is undisputed that relator was not performing his former job following the date of injury. Instead, Dr. May released relator to return to restricted duty. The employer provided relator with a job within his restrictions. However, as of December 30, 2005, the employer was unable to provide relator with any more restricted transitional work. Upon review of Dr. Bloomfield's report, it is apparent that he was completely unaware that relator was still performing transitional work and that it was the employer's inability to provide him with further transitional work which led to his unemployment after December 30, 2005. Dr. Bloomfield reviewed the record trying to find some medical evidence to support relator's departure from the workforce when, in fact, it was the employer who was unable to provide him with further transitional work. Further, to the extent that there is a lack of medical evidence, the record reflects that the employer has contested every request for treatment. Because Dr. Bloomfield's report is based on inadequate and inaccurate factual information, the magistrate finds it cannot *Page 14 
constitute some evidence upon which the commission could have relied in denying relator the requested period of TTD compensation.
 {¶ 38} Because the report of Dr. Bloomfield does not constitute "some evidence" upon which the commission could rely in denying relator TTD compensation, it is this magistrate's conclusion that this court should issue a writ of mandamus ordering the commission to vacate its order denying relator's request for TTD compensation, and to issue a new order, either granting or denying the requested period of compensation after considering both the facts in this case (i.e., the employer's continuing appeal of relator's claim and relator's apparent difficulties in pursuing the treatment regimen requested by Dr. May), the medical evidence and testimony presented at the hearing.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1