[Cite as *State ex rel. Cleveland Browns Football, Co., L.L.C. v. Indus. Comm.*, 2017-Ohio-837.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel.                                          :
Cleveland Browns Football Co., LLC,
                                                      :
      Relator,
                                                      :
v.                                                              No.  14AP-1031
                                                      :
Industrial Commission of Ohio                         (REGULAR CALENDAR)
and Ryan Pontbriand,                                  :

      Respondents.                               :

---

### D E C I S I O N

**Rendered on March 9, 2017**

---

**On brief:** *Fisher & Phillips, LLP,* and *Scott W. Gedeon,* for relator. **Argued:** *Scott W. Gedeon.*

**On brief:** *Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent, Industrial Commission of Ohio. **Argued:** *John R. Smart.*

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1}  Relator, Cleveland Browns Football Co., LLC ("the club"), is a professional sports franchise domiciled in Ohio and a self-insured employer under the Ohio workers' compensation laws.  Respondent, Ryan Pontbriand, was a skilled football player the club employed at the time he incurred an injury during a league game in 2005. Pontbriand applied for a determination of percentage of permanent partial disability ("PPD") on May 30, 2013.  The club has filed this original action requesting this Court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its August 19, 2014 order, resulting from its January 23, 2014 hearing, holding

No. 14AP-1031

that Pontbriand's PPD application was timely filed and referring it to the Ohio Bureau of Workers' Compensation ("BWC").

{¶ 2} The club asserts that Pontbriand's claim is a medical claim subject to a six-year statute of limitations that expired on May 11, 2012, as provided by former R.C. 4123.52. In a two-to-one decision, the commission found that Pontbriand's claim is not a medical claim but a lost time claim subject to a ten-year statute of limitations, also set forth in former R.C. 4123.52, and that the his claim was filed before the ten years had expired.

{¶ 3} This Court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this Court deny the club's request for a writ of mandamus.

{¶ 4} On December 22, 2015, the club filed its objections to the magistrate's decision. The commission filed its memorandum contra the objections on January 15, 2016.

{¶ 5} After reviewing the magistrate's decision, conducting an independent review of the record pursuant to Civ.R. 53, and giving due consideration of the club's objections, we overrule the club's objections and adopt the magistrate's findings of fact and conclusions of law as our own.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 6} Pontbriand sustained an injury on November 27, 2005 in the performance of his services as a professional football player for the club. At the time of his injury, Pontbriand was under a five-year NFL player contract ("the contract") with the club. Paragraph two of the contract relates to Pontbriand's duties as a player, as follows:

> EMPLOYMENT AND SERVICES. Club employs Player as a skilled football player. * * * Player will report promptly for and participate fully in Club's official mandatory mini-camp(s), official preseason training camp, all Club meetings and practice sessions, and all pre-season, regular season, and post-season football games scheduled for or by the Club. If invited, Player will practice for and play in any all-star football games sponsored by the League.

No. 14AP-1031

(Feb. 3, 2015 Stipulation of Evidence at 33.)   Paragraphs eight, nine, and ten of the contract relate to Pontbriand's physical condition, provide for provisions in the event of injury, and interface with workers' compensation, respectively:

> 8. PHYSICAL CONDITION. Player represents to Club that he is and will remain himself in excellent physical condition. Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract and to respond fully and in good faith when questioned by the Club physician about such condition. If Player fails to establish or maintain his excellent physical condition to the satisfaction of the Club physician, or make the required full and complete disclosure to the Club physician, then Club may terminate this contract.
>
> 9.   INJURY.   Unless  this  contract  specifically  provides otherwise,  if   Player  is  injured  in  the  performance  of  his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury. * * *
>
> 10. WORKERS' COMPENSATION. Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

*Id.* at 34.

{¶ 7}   On October 28, 2005, Pontbriand underwent a lumbar spine MRI at the club's request, which resulted in the following medical finding: "IMPRESSION; LARGE CENTRAL AND RIGHT SIDED HERNIATION L5-S1."   *Id.* at 6.   The clinic note of

No. 14AP-1031

October 31, 2005 indicates that the evaluating physician cleared Pontbriand to play football, but indicated that his condition would be re-evaluated if he had any increase in weakness or pain. On November 27, 2005, Pontbriand was re-evaluated for low back pain and disc herniation. The evaluating physician determined Pontbriand's condition had deteriorated and recommended surgical intervention. Pontbriand underwent surgery on December 6, 2005 for "[r]ight-sided L5-S1 microdiskectomy." *Id.* at 9.

{¶ 8} It is undisputed that Pontbriand was unable to play in the five regularly scheduled football games held on December 4, 11, 18, and 24, 2005 and January 1, 2006 as a result of his back injury and surgery. It is also undisputed that the club continued to pay Pontbriand his regular salary under the terms of the contract during the time that he was unable to play in football games and was recovering from his December 6, 2005 surgery.

{¶ 9} Pontbriand was examined January 9, 2006, at which time the examining physician wrote the following:

> I do not want [Pontbriand] doing any active resistance exercises just yet. He can do some stretching and aerobic exercises and supported upper extremity exercises. I will see him again in approximately 3 months' time prior to the next football season. He is heading back to Houston for the remainder of the year. He can continue his rehab there and in 4 weeks slowly progress into a resistance program.

*Id.* at 10. Follow-up examinations indicated that Pontbriand's surgery had resulted in a "complete resolution of symptoms." *Id.* at 11. The club paid Pontbriand's medical bills, paying the last medical bill on May 11, 2006.

{¶ 10} In June 2007, Pontbriand filed with BWC a First Report of an Injury, Occupational Disease or Death ("FROI-1"), listing November 27, 2005 as the date of injury. *Id.* at 1. On June 19, 2007, the club, acting in its capacity as a self-insured employer, certified Pontbriand's claim for "L5-S1 Disc Herniation." *Id.* at 58-59.

{¶ 11} On May 30, 2013, Pontbriand filed an Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability ("C-92") under R.C. 4123.57(A). (Stipulation of Evidence at 24.) The club objected to Pontbriand's claim on the grounds that it had been filed beyond a six-year statute of limitations. The club filed with BWC a form on which it indicated that the claim was

"medical only," not "lost time," and should be dismissed as untimely filed. *Id.* at 25. The club also indicated on the form that the last payment for Pontbriand's medical services was May 11, 2006.

{¶ 12} By order mailed June 11, 2013, BWC dismissed Pontbriand's application as barred by the expiration of the six-year statute of limitations.

{¶ 13} Pontbriand administratively appealed BWC's June 11 order, and a district hearing officer ("DHO") heard the appeal on July 29, 2013. In an order dated August 1, 2013, the DHO found that Pontbriand's claim was not subject to a six-year statute of limitations, but was subject to a ten-year statute of limitations that had not expired:

> [DHO] finds this is a lost time claim, as the Injured Worker was unable to perform the duties of his former position of employment as a football player for the Cleveland Browns and missed five games in 2005 due to the allowed condition in the claim. The Employer paid his salary in lieu of temporary total disability compensation. Even though the Injured Worker continued to attend team meetings and practices and conducted his post-operative rehabilitation at the Employer's rehabilitation facilities, there is no dispute he missed five games due to the industrial injury. Since he was unable to perform the duties of his former position of employment for five games, this constitutes the claim as lost time.
>
> As such, the applicable statutory closure period is ten years from the last date of compensation or medical benefits. In this claim, the payment of a medical bill was 05/11/2006.
>
> Therefore, the C-92 application, filed on 05/30/2013, was timely filed and shall be referred to the [BWC] for processing.

*Id.* at 28.

{¶ 14} The club's appeal of the DHO's August 1, 2013 order was heard on September 20, 2013 by a staff hearing officer ("SHO"). In an order mailed September 27, 2013, the SHO denied the club's appeal and made the additional finding that the salary the club paid Pontbriand after his injury was an advance payment of compensation under R.C. 4123.56(C). The SHO further found that, because Pontbriand had continued to receive his salary while he was unable to play football due to the allowed condition, the club was entitled to reimbursement for payment out of any workers' compensation award as provided in paragraph ten of the contract.

No. 14AP-1031

{¶ 15} The club's administrative appeal of the SHO's September 27, 2013 order was denied by a different SHO by order mailed October 22, 2013. On November 1, 2013, the club moved for reconsideration.

{¶ 16} On January 9, 2014, the commission, voting two-to-one, mailed an interlocutory order vacating the second SHO order, issued October 22, 2013. On January 23, 2014, the commission held a hearing on the club's request for reconsideration and took the matter under advisement.

{¶ 17} By order mailed August 19, 2014, the commission announced its finding, voting two-to-one, that the first SHO order, mailed September 27, 2013, had incorrectly stated that the salary Pontbriand continued to receive after his injury was advance payment of compensation under R.C. 4123.56(C). The commission exercised continuing jurisdiction in order to correct the SHO's error, granted the club's request for reconsideration, and vacated the SHO order mailed September 27, 2013. The commission determined that Pontbriand had received wages in lieu of temporary total disability ("TTD") compensation and, thus, the ten-year statute of limitations of former R.C. 4123.52 applied, making Pontbriand's claim for the determination of PPD timely filed, and made the following specific findings:

> [Pontbriand] was a professional football player on the date of injury 11/27/2005. As a result of the injury sustained in the course and scope of his employment, the Self Insuring [club] certified the claim for L5-S1 DISC HERNIATION. On 12/06/2005, [Pontbriand] underwent a microdiskectomy for correction of the allowed condition. * * *

> The [club] does not contest [Pontbriand] was unable to perform his actual football playing duties immediately subsequent to the surgery for the allowed condition. Pursuant to the contract of employment entered into between the [club] and [Pontbriand] prior to the injury, the [club] continued to pay [Pontbriand] his regular salary through the remainder of [Pontbriand's] contract. The [club] also paid the injury-related medical bills, with the last payment of a medical bill related to this claim on 05/11/2006.

> * * *

> The applicable law on the date of injury states a "medical only claim" has a six year statute of limitations, while a "lost time

No. 14AP-1031

claim" has a ten year statute of limitations. The Commission finds the salary [Pontbriand] continued to receive after his date of injury and his surgery, while [Pontbriand] was disabled from playing football, was wages in lieu of temporary total disability compensation thereby rendering the instant claim a ten-year, lost time claim.

Therefore, it is the order of the Commission that the C-92, filed 05/30/2013, was timely filed. Further it is the order of the Commission that said C-92 is referred to the [BWC] for the issuance of an order addressing [Pontbriand's PPD] due to the allowed condition in the claim.

(Stipulation of Evidence at 53.)

{¶ 18} On December 17, 2014, the club filed a complaint for a writ of mandamus with this Court. The club asserts that the commission's August 19, 2014 order is contrary to law and that the commission's factual finding is an abuse of discretion for the following reasons: (1) there is no evidence on file that Pontbriand lost wages; (2) there is no medical proof of Pontbriand's TTD; and (3) there is no evidence that Pontbriand was not capable of, and did not perform, work within his physical capabilities pursuant to the contract.

{¶ 19} The magistrate recommends in the attached decision that this Court deny the club's request for a writ of mandamus for the reason that the commission did not abuse its discretion in finding that Pontbriand's claim is a lost time claim subject to a ten-year statute of limitations, and that his application for a determination of a PPD award was timely filed.

## II. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 20} The club presents four objections to the magistrate's decision:

1. The Magistrate erred in finding this claim to be a lost time claim despite finding that Pontbriand was paid his regular salary under his NFL player's contract.

2. The Magistrate erred in finding this a lost time claim despite finding that there was no application for temporary total disability benefits.

3. The Magistrate erred in finding this a lost time claim despite no medical proof of disability in the record.

No. 14AP-1031

> 4. The Magistrate erred in finding that a written offer of suitable employment was necessary to preclude this from being a lost time claim.

## III.  LAW AND DISCUSSION

{¶ 21}  To be entitled to relief in mandamus, the club must establish (1) that it has a clear legal right to the relief prayed for, (2) that the commission is under a clear legal duty to perform the act requested, and (3) that the club has no plain and adequate remedy in the ordinary course of law.  *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, the club must show that the commission abused its discretion "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it."  *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987).

{¶ 22}  The issue before the commission was whether Pontbriand had timely filed his application for a determination of PPD.  The commission had to determine whether Pontbriand's claim was a medical only claim subject to a six-year limitation period that had expired, or a lost time claim subject to a ten-year limitation period that had not expired.  We conclude that the commission's finding that Pontbriand's claim was a lost time claim subject to the ten-year limitation period involved findings of fact and of law.

{¶ 23}  The magistrate's decision sets forth the relevant statutory provisions of the workers' compensation laws in effect at the time of Pontbriand's injury.  Former R.C. 4123.52 provides for a six-year limitation period regarding the payment of medical benefits and a ten-year period regarding the payment of TTD compensation under R.C. 4123.56(A) or wages in lieu of that compensation, as follows:

> No modification or change nor any finding or award in respect of any claim shall be made with respect to disability, compensation, dependency, or benefits, after six years from the date of injury in the absence of the payment of medical benefits under this chapter, in which event the modification, change, finding, or award shall be made within six years after the payment of medical benefits, or in the absence of payment of compensation under section 4123.57, 4123.58, or division (A) or (B) of section 4123.56 of the Revised Code or wages in lieu of compensation * * * in which event the modification, change, finding, or award shall be made within ten years from the date of the last payment of compensation * * *.

No. 14AP-1031

{¶ 24} Former R.C. 4123.56(A) provides for the payment of TDD compensation and also provides:

> [P]ayment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

{¶ 25} R.C. 4123.56(C) sets forth special provisions applicable to a professional sport franchise domiciled in Ohio:

> In the event an employee of a professional sports franchise domiciled in this state is disabled as the result of an injury or occupational disease, the total amount of payments made under a contract of hire or collective bargaining agreement to the employee during a period of disability is deemed an advanced payment of compensation payable under sections 4123.56 to 4123.58 of the Revised Code. The employer shall be reimbursed the total amount of the advanced payments out of any award of compensation made pursuant to sections 4123.56 to 4123.58 of the Revised Code.

**A. The Magistrate erred in finding this claim to be a lost time claim despite finding that Pontbriand was paid his regular salary under his NFL player's contract.**

{¶ 26} The club contends that the magistrate's decision ignores the "unique nature" of the NFL player's contract as it relates to Ohio's workers' compensation law. (Dec. 22, 2015 Relator's Objs. to Mag.'s Decision at 8.) The club argues that the purpose of TTD benefits is to compensate an injured worker for loss of earnings; because Pontbriand continued to receive his regular salary under the terms of his contract, he did not lose any wages or suffer any of compensable wage loss as a proximate result of his injury and thus did not experience a lost time claim.

{¶ 27} The club argues that the absence of C-84s, Medco 14s, off work slips, or other documentary medical evidence in the record "shows that Pontbriand did not seek [TTD] benefits as he did not have any lost wages to be compensated for through the workers' compensation system." *Id.* The club contends that the magistrate erred in

No. 14AP-1031

finding Pontbriand's claim to be a lost time claim, because "there was no loss of earnings and no need for Pontbriand to be made whole through the payment of [TTD] benefits." *Id.* at 9.

{¶ 28} The magistrate states in pertinent part:

> Temporary total disability compensation is intended to compensate an injured worker for the loss of earnings incurred while the industrial injury heals. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, ¶ 8; *State ex rel. Bunch v. Indus. Comm.*, 62 Ohio St.2d 423, 427 (1980).
>
> [The club's] argument ignores that the salary continuation during the period that Pontbriand missed football games, underwent surgery and rehabilitation, was is lieu of the TTD compensation that Pontbriand would statutorily be entitled to receive due to his temporary inability to return to his former position of employment.

(App'x at 103-04.)

{¶ 29} The magistrate stated, based on the record that "the commission determined that Pontbriand received wages in lieu of TTD compensation and, thus, the ten-year limitation period of former R.C. 4123.52 applied so that the application for determination of PPD was timely filed." (App'x at ¶ 81.) The magistrate noted that the term, "wages in lieu of compensation," as used in former R.C. 4123.52 is not defined by statute or administrative rule. The magistrate rejected the club's argument that, "Pontbriand never received wages in lieu of TTD compensation as contemplated under former R.C. 4123.52 because, allegedly, Pontbriand never had an inability to return to the former position of employment." (App'x at ¶ 83.)

{¶ 30} The magistrate covered relevant case law in his decision: "Under R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment." *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982), syllabus. The *Ramirez* court stated that "R.C. 4123.56, as excerpted above, specifically refers to the capability of an employee 'to return to his former position of employment.' 'Position' is defined by Webster's Third New International Dictionary as 'the group of tasks and responsibilities making up the duties of an employee.' " *Id.* at 632.

{¶ 31} The magistrate discussed the Supreme Court of Ohio's decision, *State ex rel. Evans v. Pepsi-Cola Bottling Co. of Columbus*, 22 Ohio St.3d 116 (1986), applying *Ramirez* in reversing this Court's judgment, stating:

> Although the court of appeals in this case found that the Industrial Commission had not abused its discretion because it determined that relator was able to return to most of the responsibilities of her former position of employment on the strength of Dr. Brown's report, a close reading of that report reveals that Dr. Brown did not state that claimant was capable of returning to her former position of employment. Indeed, Dr. Brown's report states specifically that from his examination, Evans "should not be pushing against the skid on the palletizer." As we noted in *State ex rel. Horne* v*. Great Lakes Constr. Co.* (1985), 18 Ohio St. 3d 79, 80, "[t]he phrase 'and unable to work' means the workers' compensation claimant is unable to return to his former position of employment. The phrase 'former position of employment' means the position the claimant held when he was injured." Thus, since the only evidence relied upon by the Industrial Commission below stated that the claimant should not perform the same task she was required to perform prior to her injury, there was no evidence upon which the Industrial Commission could rely for its determination that Evans is now able to work within the meaning of the workers' compensation statutes. Accordingly, the Industrial Commission abused its discretion, and the remedy of mandamus could be available to Evans. *State, ex rel. Hutton,* v*. Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66].

*Id.* at 118. The magistrate appropriately followed this precedential holding.

{¶ 32} The magistrate discussed the holding in *State ex rel. Crosby v. Dept. of Mental Retardation,* 38 Ohio St.3d 179 (1988), in which the Supreme Court cited its prior decision in *Evans* and stated, "[w]here restrictions preclude a claimant from returning to some aspect of his former job, that report cannot be relied on as 'some evidence' indicative of the ability to return to the former position of employment." *Id.* at 180.

{¶ 33} In appropriately relying on these legal authorities, the magistrate found that just because Pontbriand was able to perform duties under his contract with the club other than playing in football games, wages in lieu of TTD compensation was not precluded. While playing in football games was Pontbriand's principal duty under the contract, the magistrate found in these circumstances that, "the inability to play in football games is an

No. 14AP-1031

inability to return to the former position of employment under *Ramirez* regardless of whether the injury may not have prevented Pontbriand from performing other duties under the contract. *Evans; Crosby*." (App'x at ¶ 91.)

{¶ 34} The club does not offer any legal authority challenging these established precedents in its objections and memorandum in support.

{¶ 35} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly stated the pertinent facts and applied the appropriate law. We are bound by the legal authorities cited in the magistrate's decision. We find that the commission did not abuse its discretion when it determined that Pontbriand was statutorily entitled to receive TTD for his temporary inability to return to his former position of employment. We overrule relator's first objection to the magistrate's decision.

**B. The Magistrate erred in finding this a lost time claim despite finding that there was no application for TTD benefits.**

{¶ 36} The club argues the magistrate erred by finding Pontbriand's workers' compensation claim to be one for lost time while acknowledging that Pontbriand never requested TTD compensation. The club infers the following from the absence of a TTD application:

> Implicit in this finding is that Pontbriand's attending physician did not complete a C-84, Medco 14, off duty slip, or other competent, credible evidence certifying medical disability due to the injury. The record shows that there is absolutely no medical evidence of disability in the claim file. Because of this, the Magistrate erred in finding this is a lost time claim.

(Relator's Objs. to Mag.'s Decision at 9.)

{¶ 37} The club offers no legal authority in objecting to the magistrate's decision on this issue. The magistrate stated:

> It is undisputed that [the club] continued to pay Pontbriand his regular salary under the contract without interruption and that the contract provided for such payment. Given that Pontbriand missed five games due to his industrial injury, it was also undisputed that Pontbriand was prevented from returning to his former position of employment by the allowed condition of his claim. *Evans; Crosby*. Thus, a

> physician's certification of temporary total disability on a form provided by [BWC] or the commission would have been a vain act. Pontbriand never requested TTD compensation and, thus, was not required to provide a physician's certification in support of TTD compensation.

(App'x at ¶ 101.)

{¶ 38} Nor has the club provided authority to support its argument that an application for, or receipt of, TTD compensation is essential to the determination of a lost time claim. The commission found that Pontbriand was statutorily entitled to receive TTD because of his temporary inability to return to his former position of employment. The club had continued to pay Pontbriand under his contract. That Pontbriand never requested TTD nor provided a physician's certification in support of TTD is of no consequence.

{¶ 39} We thus overrule the club's second objection to the magistrate's decision.

### C. The Magistrate erred in finding this a lost time claim despite no medical proof of disability in the record.

{¶ 40} The club argues that the TTD statute, R.C. 4123.56, requires a threshold showing of medical proof of disability, but that there is no proof of medical disability in this matter. The club argues that the magistrate's decision "ignores the broad scope of duties" that "went well beyond the simple participation in" football games which Pontbriand was contractually bound to satisfy. (Relator's Objs. to Mag.'s Decision at 10.) The club disputes the magistrate's finding of fact that " 'playing in football games was [Pontbriand's] principal duty under the contract,' " arguing that claims for lost benefits must be supported by competent, credible evidence of disability as a basic requirement. The club claims there is no such proof "and it is merely speculative that Pontbriand was disabled." *Id.* at 11, citing Mag.'s Decision at 15.

{¶ 41} The magistrate cited in the previously quoted passage of his decision the club's contractual obligation to continue paying Pontbriand. Because Pontbriand did not formally request TTD, despite being statutorily entitled to it, he was not required by the statute to provide a physician's certification in support of TTD. Any finding otherwise cannot be gleaned from Ohio's statutes providing for just compensation of injured workers.

No. 14AP-1031

{¶ 42} The record does not contain evidence or even indication that Pontbriand participated in other duties required under his contract. The only post-surgery activity documented in the record is Pontbriand's participation in his physical rehabilitation.

{¶ 43} The club's third objection to the magistrate's decision is overruled.

### D. The Magistrate erred in finding that a written offer of suitable employment was necessary to preclude this from being a lost time claim.

{¶ 44} The club argues there was no need to make an offer of work within Pontbriand's physical disability because Pontbriand had contractually agreed to remain employed as, and engaged in the activities of, a football player in the event of injury. Contract interpretation is one thing. The application of the law to the provisions of a contract is another. The club provides no legal authority to support its argument contra the magistrate's decision. We find no error in his decision on this point. We explain.

{¶ 45} TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work, (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment, (3) when work within the physical capabilities of claimant is made available by the employer or another employer, or (4) claimant has reached maximum medical improvement. *See* R.C. 4123.56(A); *Ramirez.*

{¶ 46} The magistrate found that the club was required to provide Pontbriand a written offer of other employment and that this is supported by R.C. 4123.56(A); Ohio Adm.Code 4121-3-32(A); Ohio Adm.Code 4121-3-32(B)(1)(d); *State ex rel. Ganu v. Willow Brook Christian Communities*, 108 Ohio St.3d 296, 2006-Ohio-907, ¶ 36, citing *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428 (2000). We agree. The magistrate stated:

> The problem with [the club's] argument, as well as the position of the dissenting commissioner, is that relator does not allege that it ever made a written job offer of suitable employment. [The club] ignores Ohio Adm.Code 4121-3-32(A), which supplements R.C. 4123.56(A) with regard to the statutory provision at issue here.
>
> Whether or not the NFL Player Contract even permitted relator to make a written job offer of suitable employment is not an issue before this court. Having failed to make a written

No. 14AP-1031

> job offer of suitable employment, [the club] cannot argue that a finding of receipt of wages in lieu of TTD compensation is barred by R.C. 4123.56(A) 's provision that TTD payments shall not be made "when work within the physical capabilities of the employee is made available by the employee [sic]."

(App'x at ¶ 98-99.)

{¶ 47} The club's fourth objection to the magistrate's decision is overruled.

## IV. CONCLUSION

{¶ 48} Having reviewed the magistrate's decision and completed an independent review of the record, giving due consideration of the club's objections, we find the magistrate's finding of facts and conclusions of law to be appropriate, and we adopt them as our own. We hereby overrule the club's objections to the magistrate's decision and deny the club's petition for a writ of mandamus.

*Objections overruled;*
*petition for writ of mandamus dismissed.*

KLATT and DORRIAN, JJ., concur.

_____

No. 14AP-1031

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cleveland Browns Football Co., LLC, | : | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 14AP-1031 |
| | : | |
| Industrial Commission of Ohio and Ryan Pontbriand, | | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on December 14, 2015

*Fisher & Phillips LLP,* and *Scott W. Gedeon,* for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 49} In this original action, relator, Cleveland Browns Football Co., LLC ("Cleveland Browns"), requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its January 23, 2014 order holding that the application for determination of percentage of permanent partial disability ("PPD") filed by respondent, Ryan Pontbriand, on May 30, 2013, was timely filed within the ten-year

No. 14AP-1031

statute of limitations set forth in former R.C. 4123.52, and to enter an order holding that the application is statutorily barred.

Findings of Fact:

{¶ 50} 1. On July 27, 2003, Ryan Pontbriand executed an NFL player contract with the Cleveland Browns. The contract covered a five-year period beginning March 1, 2003.

{¶ 51} 2. Pursuant to the contract, Pontbriand was employed by the Cleveland Browns as a professional football player. Pontbriand performed on the football field as a long snapper for field goals and punting.

{¶ 52} 3. Paragraph two of the contract provided:

> EMPLOYMENT AND SERVICES. Club employs Player as a skilled football player. * * * Player will report promptly for and participate fully in Club's official mandatory mini-camp(s), official preseason training camp, all Club meetings and practice sessions, and all pre-season, regular season, and post-season football games scheduled for or by Club. If invited. Player will practice for and play in any all-star football game sponsored by the League.

(Emphasis sic.)

{¶ 53} 4. Paragraphs eight through ten of the contract provided:

> [Eight] PHYSICAL CONDITION. Player represents to Club that he is and will maintain himself in excellent physical condition. Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract and to respond fully and in good faith when questioned by the Club physician about such condition. If Player fails to establish or maintain his excellent physical condition to the satisfaction of the Club physician, or make the required full and complete disclosure and good faith responses to the Club physician, then Club may terminate this contract.

No. 14AP-1031

> [Nine] INJURY. Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury.

> [Ten] WORKERS' COMPENSATION. Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

(Emphasis sic.)

{¶ 54} 5. On June 9, 2005, at relator's request, Pontbriand was examined by Jeff Kovacic, M.D., of the Cleveland Clinic Foundation. In a "Clinic Note," Dr. Kovacic wrote:

> Ryan reports no new injuries since last year and no new problems. He does report having a chronic back issue with regards to a back strain as a result of playing in his particular position. This has not changed but he denies any radiculopathy-type symptoms. Overall he is feeling his baseline.

{¶ 55} 6. On October 28, 2005, at relator's request, Pontbriand underwent an MRI of the lumbar spine. The interpreter's report states: "IMPRESSION: LARGE CENTRAL AND RIGHT SIDED HERNIATION L5-S1."

{¶ 56} 7. On November 27, 2005, at relator's request, Pontbriand was seen for an evaluation by Anthony Miniaci, M.D., of the Cleveland Clinic. Dr. Miniaci wrote:

No. 14AP-1031

> He has a large disc herniation, which is compressing the nerve root and has been steadily deteriorating with his symptomatology. Last week he had no motor strength abnormalities but did have some straight leg raising signs and sensory changes. It was decided with Dr. Lieberman and Ryan made the decision not to proceed with surgery. He could play with it for this season.
>
> Evaluation at the end of today's game reveals some weakness in his cap musculature and has some difficulty getting up on his toes. In view of his deterioration we would recommend surgical intervention today.

{¶ 57} 8. On December 6, 2005, Pontbriand underwent surgery performed by Isador Lieberman, M.D.  In his operative report, Dr. Lieberman describes the surgery as "[r]ight-sided L5-S1 microdiskectomy."

{¶ 58} 9. On January 9, 2006, Pontbriand was seen by Dr. Lieberman for a follow-up.  On that date, Dr. Lieberman wrote:

> Ryan Pontbriand returned to the clinic to see me. He is doing very well 4 weeks after his microdiskectomy. His radicular symptoms have completely resolved. He still has a little bit of numbness on the sole of the foot which is intermittent.
>
> I do not want him doing any active resistance exercises just yet. He can do some stretching and aerobic exercises and supported upper extremity exercises. I will see him again in approximately 3 months' time prior to the next football season. He is heading back to Houston for the remainder of the year. He can continue his rehab there and in 4 weeks slowly progress into a resistance program.

{¶ 59} 10. It is undisputed that Pontbriand was unable to play in five regularly scheduled football games as a result of his back injury that was certified by relator. According to the commission here, Pontbriand missed the games scheduled for December 4, 11, 18, and 24, 2005, and January 1, 2006.  In its reply brief, relator does not dispute the commission's factual assertion regarding the games missed by Pontbriand due to his back injury and surgery.

No. 14AP-1031

{¶ 60} It is further undisputed that relator continued to pay Pontbriand his regular salary under the terms of the contract during the period of time that Pontbriand was unable to play in the football games and was recovering from the December 6, 2005 surgery.

{¶ 61} 11. On June 15, 2006, at relator's request, Pontbriand was examined by Morgan Jones, M.D., of the Cleveland Clinic. Dr. Jones wrote:

> He had lumbar discectomy in December 2005 after about one year of symptoms including numbness and significant calf weakness and pain. He has complete resolution of symptoms since the surgery and is back to full activity. He has no current symptoms and no other injuries or surgeries.
>
> * * *
>
> IMPRESSION: Status lumbar discectomy in December 2005, with complete relief of symptoms.

{¶ 62} 12. The Ohio Bureau of Workers' Compensation ("bureau") provides a form captioned "First Report of an Injury, Occupational Disease or Death," which the bureau designates as a FROI-1. In June 2007, Pontbriand completed the form. He listed November 27, 2005 as the date of injury. The industrial claim was assigned No. 05-899920.

{¶ 63} 13. On June 29, 2007, relator, as a self-insured employer under the Ohio workers' compensation laws, certified the claim for "L5-S1 Disc Herniation."

{¶ 64} 14. On June 10, 2013, Pontbriand filed an application for determination of his percentage of PPD under R.C. 4123.57(A). Pontbriand's application prompted relator to complete bureau form C-256 on which it objected to the application on grounds that the industrial claim is allegedly beyond the statute of limitations. On the form, relator

indicated by its mark that the industrial claim is "Medical only" rather than "Lost time."

Relator also indicated that May 11, 2006 was the date of last payment for medical services.

{¶ 65} 15. On June 11, 2013, the bureau mailed an order dismissing the

application. The bureau explained:

> Employer representative advises no compensation or medical paid on this claim. Therefore, statute of limitations has expired.

{¶ 66} 16. Pontbriand administratively appealed the bureau's June 11, 2013 order.

{¶ 67} 17. Following a July 29, 2013 hearing, a district hearing officer ("DHO")

issued an order holding that the application was timely filed. The DHO determined that

relator had paid Pontbriand his salary in lieu of temporary total disability ("TTD")

compensation and thus, the ten-year statute of limitation provision of former R.C.

4123.52 applied such that the industrial claim remained active on the application date.

The DHO's order explains:

> District Hearing Officer finds the claim has not [statutorily] expired and that the C-92 application, filed by the Injured Worker on 05/30/2013, was timely filed.
>
> The District Hearing Officer finds this is a lost time claim, as the Injured Worker was unable to perform the duties of his former position of employment as a football player for the Cleveland Browns and missed five games in 2005 due to the allowed condition in the claim. The Employer paid his salary in lieu of temporary total disability compensation. Even though the Injured Worker continued to attend team meetings and practices and conducted his post-operative rehabilitation at the Employer's rehabilitation facilities, there was no dispute he missed five games due to the industrial injury. Since he was unable to perform the duties of his former position of employment for five games, this constitutes the claim as lost time.
>
> As such, the applicable statutory closure period is ten years from the last date of compensation or medical benefits. In the claim, the last payment of a medical bill was 05/11/2006.

> Therefore, the C-92 application, filed on 05/30/2013, was timely filed and shall be referred to the Bureau of Workers' Compensation for processing.

{¶ 68} 18. Relator administratively appealed the DHO's order of July 29, 2013.

{¶ 69} 19. Following a September 20, 2013 hearing, a staff hearing officer ("SHO") mailed an order on September 27, 2013 that, in effect, affirms the DHO's order of July 29, 2013, but with additional findings. The SHO held that the regular salary paid to Pontbriand while he was disabled constitutes advanced payment of compensation under R.C. 4123.56(C) and, thus, relator would be entitled to reimbursement from the PPD award. The SHO's order of September 20, 2013 explains:

> The C-92 Application, filed 05/30/2013, is found to be timely filed.
>
> The Hearing Officer finds that the C-92 Application was filed within 10 years of the date of the last payment of compensation.
>
> The Injured worker was a professional football player and an employee of the Cleveland Browns, a professional sports franchise domicile in Ohio at the time of the industrial injury. The contract of hire provided the Injured Worker with compensation whether or not he could play or was injured and could not play.
>
> The Injured Worker received his regular salary during the year of the Industrial Injury and subsequent to the industrial injury per the contract of hire. These payments of compensation are deemed an advanced payment of compensation per Revised Code section 4123.56(C).
>
> Per Ohio Revised Code 4123.56(C), in the event an employee of the professional sports franchise domiciled in this state is disabled as the result of an injury or occupational disease, the total amount of payments made under the contract of hire or collective bargaining agreement to the employee during the period of disability is deemed an advanced payment of compensation payable under sections 4123.56 to 4123.58 of the Revised Code. The Employer shall be

No. 14AP-1031

> reimbursed the total amount of advanced payments out of an award of compensation made pursuant to sections 4123.56 to 4123.58 of the Revised Code. The amount of payment, which the Injured Worker received following the industrial injury, is deemed an advance of compensation per Revised Code section 4123.56(C). The Employer shall be reimbursed the total amount of advanced payments made to the Injured Worker out of any award of compensation made pursuant to sections 4123.56 to 4123.58 of the Revised Code.
>
> Since permanent partial disability compensation is an award made pursuant to Revised Code 4123.57, should the Injured Worker receive a permanent partial disability award, the Employer is entitled to reimbursement of the permanent partial disability award up to the amount of the contract payments which were made to the Injured Worker.
>
> * * *
>
> Per Revised Code section 4123.56(C), the Hearing Officer finds that the Injured Worker received advanced payments of compensation as he received compensation following the industrial injury per the contract of hire. The C-92 Application, therefore, is found to have been timely filed. However, any award of compensation payable under R.C. 4123.57 shall be reimbursed to the Employer up to the total amount of advanced payments which were previously paid to the Injured Worker.

{¶ 70} 20. On October 20, 2013, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 20, 2013.

{¶ 71} 21. On November 1, 2013, relator moved for reconsideration of the SHO's order of September 20, 2013 that was mailed September 27, 2013.

{¶ 72} 22. On January 9, 2014, the three-member commission, on a two-to-one vote, mailed an interlocutory order, stating:

> It is the finding of the Industrial Commission that the Employer has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact and a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged the Staff Hearing Officer erred factually by finding that the Injured Worker received advanced compensation and legally by finding this claim was a lost time claim subject to a 10-year statute of limitation.

The order issued 10/22/2013 is vacated, set aside and held for naught.

Based on these findings, the Industrial Commission directs that the Employer's Request for Reconsideration, filed 11/01/2013, is to be set for hearing to determine whether the alleged mistakes of law and fact as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s). The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue(s).

{¶ 73} 23. Following a January 23, 2014 hearing, the three-member commission, with one member dissenting, issued an order exercising continuing jurisdiction over the SHO's order of September 20, 2013 (mailed September 27, 2013). The commission's order of January 23, 2014 vacates the SHO's order of September 20, 2013 (mailed September 27, 2013).

{¶ 74} In its January 23, 2014 order, the commission finds that the SHO's order of September 20, 2013 errs in finding that the salary continuation received by Pontbriand was R.C. 4123.56(C) advanced payment of compensation subject to the employer's reimbursement out of any future award of compensation made pursuant to sections 4123.56 to 4123.58 of the Revised Code.

No. 14AP-1031

{¶ 75} 24. The commission's January 23, 2014 order (two members concurring) explains:

> [I]t is the finding of the Industrial Commission the Employer has met its burden of proving that the Staff Hearing Officer order, issued 09/27/2013, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Commission finds the Staff Hearing Officer erred in finding the salary continuation received by the Injured Worker from the Employer after the industrial injury was sustained 11/27/2005 was "advanced payment of compensation per Revised Code section 4123.56(C)." The Commission specifically finds the salary the Injured Worker received was compensation received in lieu of temporary total disability compensation. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm., 81 Ohio St.3d 454, 692 N.E.2d 188 (1998), State ex rel. Foster v. Indus. Comm., 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct this error.
>
> The Employer's request for reconsideration, filed 11/01/2013, is granted. The Employer's appeal, filed 10/11/2013, from the Staff Hearing Officer order, issued 09/27/2013, is granted to the extent of this order. It is further ordered that the Staff Hearing Officer order, issued 09/27/2013, is vacated.
>
> The Injured Worker was a professional football player on the date of injury 11/27/2005. As a result of the injury sustained in the course and scope of his employment, the Self Insuring Employer certified the claim for L5-S1 DISC HERNIATION. On 12/06/2005, the Injured Worker underwent a microdiskectomy for correction of the allowed condition. In the office note from Isador Lieberman, M.D., dated 01/03/2006, Dr. Lieberman wrote:
>
> > Ryan Pontbriand returned to the clinic to see me. He is doing very well 4 weeks after his microdiskectomy. His radicular symptoms have completely resolved. He still has a little bit of numbness on the sole of the foot which is intermittent.

No. 14AP-1031

> I do not want him doing any active resistance exercises just yet. He can do some stretching and aerobic exercises and supported upper extremity exercises. I will see him again in approximately 3 months' time prior to the next football season. He is heading back to Houston for the remainder of the year. He can continue his rehab here and in 4 weeks slowly progress into a resistance program.

The Employer does not contest the Injured Worker was unable to perform his actual football playing duties immediately subsequent to the surgery for the allowed condition. Pursuant to the contract of employment entered into between the Employer and the Injured Worker prior to the injury, the Employer continued to pay the Injured Worker his regular salary through the remainder of the Injured Worker's contract. The Employer also paid the injury-related medical bills, with the last payment of a medical bill related to this claim on 05/11/2006.

On 05/30/2013, the Injured Worker filed a C-92, Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability. The Employer rejected the C-92 as not timely filed, arguing the claim was statutorily dead by operation of law. Per the Employer, the Injured Worker's claim was subject to a six year medical-only statute of limitations, not a ten year, lost time statute of limitations. The Injured Worker argues the salary he received after his injury was "wages in lieu of compensation," and the claim is subject to the ten year statute limitations.

The applicable law on the date of injury states a "medical only claim" has a six year statute of limitations, while a "lost time claim" has a ten year statute of limitations. The Commission finds the salary the Injured Worker continued to receive after his date of injury and his surgery, while the Injured Worker was disabled from playing football, was wages in lieu of temporary total disability compensation thereby rendering the instant claim a ten-year, lost time claim.

Therefore, it is the order of the Commission the C-92, filed 05/30/2013, was timely filed. Further, it is the order of the Commission that said C-92 is referred to the Bureau of Workers' Compensation for the issuance of an order

No. 14AP-1031

> addressing the Injured Worker's permanent partial disability
> due to the allowed condition in the claim.

(Emphasis sic.)

{¶ 76} 25. On December 17, 2014, relator, Cleveland Football Co., LLC, filed this mandamus action.

Conclusions of Law:

{¶ 77} Several issues are presented: (1) given that temporary total disability is defined as a disability that prevents a worker from returning to his former position of employment, is a finding of a receipt of wages in lieu of TTD compensation precluded by Pontbriand's alleged ability to perform duties under the contract other than playing in football games; (2) whether a finding of receipt of wages in lieu of TTD compensation is precluded because, allegedly, relator made available to Pontbriand work within his physical capabilities; (3) whether the absence of an attending physician's certification of temporary total disability on one or more forms provided for that purpose precluded a finding of receipt of wages in lieu of TTD compensation; and (4) whether the alleged absence of lost wages precludes a finding of receipt of wages in lieu of TTD compensation.

## Basic Law

{¶ 78} On the date of Pontbriand's injury, former R.C. 4123.52 provided:

> No modification or change nor any finding or award in respect of any claim shall be made with respect to disability, compensation, dependency, or benefits, after six years from the date of injury in the absence of the payment of medical benefits under this chapter, in which event the modification, change, finding, or award shall be made within six years after the payment of medical benefits, or in the absence of payment of compensation under section 4123.57, 4123.58, or division (A) or (B) of section 4123.56 of the Revised Code or wages in lieu of compensation * * * in which event the modification, change, finding, or award shall be made within ten years from the date of the last payment of compensation * * *.

{¶ 79} R.C. 4123.56(A) provides for the payment of TTD compensation. The statute further provides:

> [P]ayment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

> R.C. 4123.56(C) provides:

> In the event an employee of a professional sports franchise domiciled in this state is disabled as the result of an injury or occupational disease, the total amount of payments made under a contract of hire or collective bargaining agreement to the employee during a period of disability is deemed an advanced payment of compensation payable under sections 4123.56 to 4123.58 of the Revised Code. The employer shall be reimbursed the total amount of the advanced payments out of any award of compensation made pursuant to sections 4123.56 to 4123.58 of the Revised Code.

### First Issue

{¶ 80} As earlier noted, former R.C. 4123.52 provides for a six-year limitation period regarding the payment of medical benefits and a ten-year limitation period regarding the payment of TTD compensation under R.C. 4123.56(A) or wages in lieu of that compensation.

{¶ 81} Here, the commission determined that Pontbriand received wages in lieu of TTD compensation and, thus, the ten-year limitation period of former R.C. 4123.52 applied so that the application for the determination of PPD was timely filed.

{¶ 82} While the former statute specifically referred to "wages in lieu of compensation," that term is not defined by statute or administrative rule.

No. 14AP-1031

{¶ 83} However, relator endeavors to prove that Pontbriand never received wages in lieu of TTD compensation as contemplated under former R.C. 4123.52 because, allegedly, Pontbriand never had an inability to return to the former position of employment. The argument is not persuasive.

{¶ 84} Under R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982), syllabus.

> In *Ramirez,* the court states:
>
> R.C. 4123.56, as excerpted above, specifically refers to the capability of an employee "to return to his former position of employment." "Position" is defined by Webster's Third New International Dictionary as "the group of tasks and responsibilities making up the duties of an employee."

*Id.* at 632.

{¶ 85} In *State ex rel. Evans v. Pepsi-Cola Bottling Co. of Columbus,* 22 Ohio St.3d 116 (1986), the court had occasion to apply its decision in *Ramirez.*

{¶ 86} Mary Evans sustained a lumbar strain and cervical disability when she pushed against the skid on a palletizer using her back and pushing with her foot against the metal bar. While Evans received TTD compensation, her employer moved for termination of the benefits. The commission ordered that Evans be examined by Dr. John Q. Brown. In his report, Dr. Brown wrote:

> It would be my opinion from this examination that she should not be pushing against the skid on the palletizer.

*Id.* at 117.

{¶ 87} Stating that the report of Dr. Brown "indicates that claimant can substantially return to her former position of employment," the commission terminated TTD compensation. *Id.* at 117.

{¶ 88} Evans then filed a mandamus action in this court. This court denied the writ and Evans appealed as of right to the Supreme Court of Ohio.

> In *Evans,* the Supreme Court of Ohio addressed this court's decision:
>
> The court further stated, "[t]he Commission has the authority to weigh the evidence before it and could have construed Dr. Brown's report as evidence that relator could return to her former position of employment subject to a cautionary limitation regarding pushing against jammed skids. * * *

*Id.* at 117.

{¶ 89} Reversing the judgment of this court, the Supreme Court of Ohio explained:

> Although the court of appeals in this case found that the Industrial Commission had not abused its discretion because it determined that relator was able to return to most of the responsibilities of her former position of employment on the strength of Dr. Brown's report, a close reading of that report reveals that Dr. Brown did not state that claimant was capable of returning to her former position of employment. Indeed, Dr. Brown's report states specifically that from his examination, Evans "should not be pushing against the skid on the palletizer." As we noted in *State, ex rel. Horne, v. Great Lakes Constr. Co.* (1985), 18 Ohio St. 3d 79, 80, "[t]he phrase 'and unable to work' means the workers' compensation claimant is unable to return to his former position of employment. The phrase 'former position of employment' means the position the claimant held when he was injured." Thus, since the only evidence relied upon by the Industrial Commission below stated that the claimant should not perform the same task she was required to perform prior to her injury, there was no evidence upon which the Industrial Commission could rely for its determination that Evans is now able to work within the meaning of the workers' compensation statutes. Accordingly, the Industrial Commission abused its discretion, and the remedy of mandamus could be available to Evans.

*Id.* at 118.

{¶ 90} In *State ex rel. Crosby v. Dept. of Mental Retardation [and Developmental Disabilities],* 38 Ohio St.3d 179 (1988), citing its prior decision in *Evans,* the Supreme Court of Ohio states:

> Where restrictions preclude a claimant from returning to some aspect of his former job, that report cannot be relied on as "some evidence" indicative of the ability to return to the former position of employment.

*Id.* at 180.

{¶ 91} It is clear from the above authorities that a finding of receipt of wages in lieu of TTD compensation was not precluded by Pontbriand's alleged ability to perform duties under the contract other than playing in football games. Clearly, playing in football games was the principal duty under the contract. Under such circumstances, the inability to play in football games is an inability to return to the former position of employment under *Ramirez* regardless of whether the injury may not have prevented Pontbriand from performing other duties under the contract. *Evans; Crosby.*

## Second Issue

{¶ 92} As earlier noted, R.C. 4123.56(A) provides that payment of TTD compensation shall not be made for the period "when work within the physical capabilities of the employee is made available by the employer."

{¶ 93} Supplementing the statute, Ohio Adm.Code 4121-3-32(A) provides the following definitions:

> (3) "Suitable employment" means work which is within the employee's physical capabilities.

No. 14AP-1031

(4) "Treating physician" means the employee's attending physician of record on the date of the job offer, in the event of a written job offer to an employee by an employer.

* * *

(6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

{¶ 94} Ohio Adm.Code 4121-3-32(B)(1)(d) provides that temporary total disability may be terminated "[u]pon the finding of a district hearing officer that the employee has received a written job offer of suitable employment."

{¶ 95} A written offer of suitable employment must clearly identify the physical demands of the job; an offer lacking the requisite clarity cannot be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored. *State ex rel. Ganu v. Willow Brook Christian Communities*, 108 Ohio St.3d 296, 2006-Ohio-907, ¶ 14, citing *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428 (2000).

{¶ 96} According to relator:

The NFL Player Contract outlines a broad scope of duties well beyond those of simply playing games. In agreeing to his Player Contract, Pontbriand became obligated to participate in mandatory mini camps, official pre-season training camps, all club meetings, all club practice sessions, and all pre-season, regular season and post-season football games,

33

> in addition to the basic requirement of maintaining himself in excellent physical condition. As is quite evident, Pontbriand was compensated under his NFL player contract for duties well beyond simple performance in NFL regular season games.
>
> Pontbriand also appeared in promotional and community events on behalf of the Cleveland Browns and engaged in rehabilitative efforts and Club activities, including attendance at games during the course of his rehabilitation from his injury. As such, there is no evidence that Pontbriand did not perform work within his physical capabilities following his injury.

(Relator's Brief, 11.)

{¶ 97} It can be noted that the dissenting commissioner also argued as does relator:

> In order for the 10-year statute of limitations to apply to this claim, R.C. 4123.52 requires the Injured Worker to have received compensation under R.C. 4123.56, R.C. 4123.57, or R.C. 4123.58. I do not find persuasive the argument that payment of the Injured Worker's regular, contractually mandated salary constituted payment of compensation in lieu of temporary total disability compensation under R.C. 4123.56. The player's contract required the Injured Worker to provide a variety of services, including attendance at games, practices, and meetings, as well as rehabilitation and promotional appearances. Actively participating in football games was only one of the Injured Worker's duties, albeit the most important one. The claim file lacks evidence that the Injured Worker did not perform the other services required of him under his player's contract.
>
> I would find the Injured Worker never left his position as a skilled football player for the Employer. R.C. 4123.56 specifically provides temporary total disability compensation is not payable when an employee has returned to work or work within the physical capabilities of the employee is made available by the employer.

{¶ 98} The problem with relator's argument, as well as the position of the dissenting commissioner, is that relator does not allege that it ever made a written job

No. 14AP-1031

offer of suitable employment. Relator ignores Ohio Adm.Code 4121-3-32(A), which supplements R.C. 4123.56(A) with regard to the statutory provision at issue here.

{¶ 99} Whether or not the NFL Player Contract even permitted relator to make a written job offer of suitable employment is not an issue before this court. Having failed to make a written job offer of suitable employment, relator cannot argue that a finding of receipt of wages in lieu of TTD compensation is barred by R.C. 4123.56(A) 's provision that TTD payments shall not be made "when work within the physical capabilities of the employee is made available by the employee."

### Third Issue

{¶ 100} The third issue is whether the absence of an attending physician's certification of temporary total disability on one or more forms provided for that purpose precluded a finding of receipt of wages in lieu of TTD compensation.

> According to relator:
>
> A review of the record shows that there is absolutely no medical documentation including C-84s, Medco-14s, off work slips, or other medical documentation that is proof of temporary total disability. The burden is on Pontbriand alone to establish his entitlement to temporary total disability through medical proof.

(Relator's Brief, 10.)

{¶ 101} Relator's argument lacks merit. It is undisputed that relator continued to pay Pontbriand his regular salary under the contract without interruption and that the contract provided for such payment. Given that Pontbriand missed five games due to his industrial injury, it was also undisputed that Pontbriand was prevented from returning to his former position of employment by the allowed condition of his claim. *Evans; Crosby.* Thus, a physician's certification of temporary total disability on a

form provided by the bureau or commission would have been a vain act. Pontbriand never requested TTD compensation and, thus, was not required to provide a physician's certification in support of TTD compensation.

## Fourth Issue

{¶ 102} The fourth issue is whether the alleged absence of lost wages precludes a finding of receipt of wages in lieu of TTD compensation.

> According to relator:

> Simply put, there is no lost time as there are no lost wages as Pontbriand never suffered any sort of compensable loss in wages as a proximate result of his injury. Had Pontbriand sought temporary total disability benefits, that request would have been moot as Pontbriand could not have shown any lost wages on account of his injury.

(Relator's Brief, 10.)

{¶ 103} Temporary total disability compensation is intended to compensate an injured worker for the loss of earnings incurred while the industrial injury heals. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, ¶ 8; *State ex rel. Bunch v. Indus. Comm.,* 62 Ohio St.2d 423, 427 (1980).

{¶ 104} Relator's argument ignores that the salary continuation during the period that Pontbriand missed football games, underwent surgery and rehabilitation, was in lieu of the TTD compensation that Pontbriand would statutorily be entitled to receive due to his temporary inability to return to his former position of employment.

{¶ 105} In short, relator's argument lacks merit.

## Conclusion

{¶ 106} For all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

No. 14AP-1031

/S/MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**